**BARNES COUNTY, North Dakota, a municipal corporation, Plaintiff and Appellee,**

v.

**GARRISON DIVERSION CONSERVANCY DISTRICT, Defendant and Appellant.**

**Civ. No. 9926.**

Supreme Court of North Dakota.

Oct. 30, 1981.

Mikal Simonson, State's Atty., Valley City, for plaintiff and appellee.

Zuger & Bucklin, Bismarck, and Michael Dwyer, Asst. Atty. Gen., State Water Commission, Bismarck, for defendant and appellant; argued by Murray G. Sagsveen, Bismarck.

PEDERSON, Justice.

■ The ultimate question presented in this case involves the extent to which administrative decisions made by administrative agencies established for that purpose may be transferred through an appeal procedure to the judiciary. We conclude that the principle of separation of powers requires that statutes authorizing judicial review of administrative determinations be so construed that the judiciary's role will be limited always to a review, judicial in scope, as defined by statute and case law, which avoids a substitution of the judgment of the judge for that of the administrator. The judgment of the district court permitting withdrawal of Barnes County from the Garrison Diversion Conservancy District is reversed. The case is remanded for the entry of a judgment affirming the determination by the Garrison Diversion Conservancy District denying the application by Barnes County to withdraw from the District.

The Garrison Diversion Conservancy District was created by Chapter 348, Session Laws 1955 (Ch. 61–24, NDCC), in order to facilitate the establishment, construction

and maintenance of the "Garrison Diversion Unit of the Missouri River Basin Project as authorized by Act of Congress approved December 22, 1944 (58 Stat. 887), and Acts amendatory thereof and supplementary thereto." (See Section 1, Chapter 348, Session Laws 1955; Section 61–24–01, NDCC.) The statute contains no complete definition of "Garrison Diversion Unit." The Act of Congress approved December 22, 1944, known as the Flood Control Act of 1944, contained a definition of "Missouri-Souris Diversion Unit," but not "Garrison Diversion Unit." Since the early 1920's diversion of Missouri River waters into central and eastern North Dakota has involved two schemes: one proposed a diversion in eastern Montana to supply a canal leading into western North Dakota, and the other proposed a diversion at Garrison through canals into central and eastern North Dakota and the Souris and Red Rivers flowing ultimately north into Canada, as well as to the James River, flowing ultimately south back into the Missouri River.

The Conservancy District was declared to be a "governmental agency, body politic and corporate" and consisting "of that part of the state which is included within the boundaries of the following [22] counties, to wit: Barnes, Benson, Bottineau, Cass, Dickey, Eddy, Foster, Grand Forks, Griggs, LaMoure, McHenry, McLean, Nelson, Pierce, Ramsey, Ransom, Renville, Sargent, Sheridan, Stutsman, Ward, and Wells." Subsequently, by following the procedure set forth in § 61–24–02, NDCC, Traill County became a member on April 17, 1956; Richland County became a member on October 10, 1956; and Steele County became a member on March 27, 1957.

Section 61–24–16, NDCC, presently and at the time this matter was presented to the Conservancy District, permits exclusion from the Conservancy District of any county "not benefited or not to be benefited, in whole or in part, by the establishment of the Garrison Diversion Unit." [1] The origi-

1. "61–24–16. County may be excluded from conservancy district if not benefited.

"1. Any county in the conservancy district not benefited or not to be benefited, in whole or in part, by the establishment of the Garrison Diversion Unit of the Missouri River Basin Project as authorized by Act of Congress, approved December 22, 1944 [58 Stat. 887], and acts amendatory thereof or supplementary thereto, may be excluded from the district as provided herein. The board of county commissioners of any such county may by resolution direct the county auditor and the chairman of the board to file with the board of directors of the conservancy district a petition, for and on behalf of the county, requesting the board of directors of the district to exclude such county therefrom. A certified copy of the resolution of the county board shall accompany and be filed with such petition. The petition and resolution shall state specific reasons why such county will not be benefited by the establishment and development of the Garrison Diversion Unit.

"2. Within sixty days from the date of filing said resolution and petition for exclusion from the district the district board shall meet to consider such petition. It may grant such petition or it may fix a time and place for a hearing thereon. If a hearing be set, the secretary of the board shall cause notice of the filing of such petition for exclusion, and of the time and place for a hearing, to be published once each week for two consecu-

tive weeks in a newspaper of general circulation printed in the district. The hearing mentioned in such notice shall be held not less than ten nor more than twenty days after the last publication of such notice. The notice shall state that any person, corporation, municipality and county in the district may appear or be represented at the hearing and show cause why the petition should or should not be granted. The board shall hear the petition at the time and place mentioned in the notice.

"3. If after the hearing on the petition the district board of directors shall determine that the county requesting to be excluded from the district will not be benefited the district board shall by resolution grant the petition and shall direct the chairman and secretary to execute the order of the board excluding such county from the conservancy district. If, however, the district board shall decide that such county will be benefited it shall deny the petition and direct the chairman and secretary to execute its order refusing to exclude such county from the district. A county excluded from the conservancy district shall not be liable for any obligations thereof incurred after exclusion but shall be liable for and shall pay to the district taxes levied before exclusion.

"4. If any contract shall have been made with the United States or any agency thereof before such petition is filed, such petition shall not be granted unless consented thereto

nal Act permitted exclusion of any county "not directly benefited by the establishment of the Garrison Diversion Unit." We do not address the question of the validity of this amendment changing the rule under which a county may be excluded, as it was not raised until oral argument before this court and was neither researched nor briefed by the parties. We assume the present law applies as was assumed during all proceedings heretofor.

In a proceeding entitled *In re Garrison Diversion Conservancy District*, 144 N.W.2d 82 (N.D.1966), this court approved the creation of the Conservancy District, upheld the constitutionality of the statute, and, in effect at the behest of the United States, approved the January 26, 1966, master contract between the United States and the Conservancy District relating to the construction of the Garrison Diversion Unit. There is no explicit definition of "Garrison Diversion Unit" in the master contract. It is referred to in the words: "generally in accordance with the Garrison Diversion Unit report of January 1957, as approved by the Secretary of the Interior on June 21, 1958, and pursuant to the Act of August 5, 1965 (79 Stat. 433)."

Urged by a petition from some of its citizens, Barnes County, claiming it was not benefited by the Garrison Diversion Unit, followed the procedure of § 61–24–16, and petitioned the Conservancy District for exclusion. After a hearing at which oral and written evidence was received, the Conservancy District determined that Barnes County will be benefited by the Garrison Diversion Unit and denied the exclusion.[2]

The resolution denying the petition of Barnes County to be excluded from the Garrison Diversion Conservancy District, which was introduced at the proceedings in district court as an annex to Exhibit 36, states in material part:

> by the appropriate agency of the United States and if such agency gives its consent upon condition, such conditions shall be included in the order of exclusion and the county may be required to and in that event such county shall continue to pay any tax levies required to meet the obligations of any such contract."

"WHEREAS ... testimony was presented indicating that Barnes County, North Dakota, would be benefited through the development of the Garrison Diversion Unit as follows:

"1) Approximately 32,000 acres of land for irrigation has been identified in Barnes County as part of the ultimate plan of the Missouri River Basin Project as authorized December 22, 1944.

"2) Future municipal and industrial water from the project for Valley City.

"3) Flood control from Lonetree Reservoir.

"4) Increased trade and business benefits resulting from irrigation development in the Oakes-LaMoure area as part of the reauthorized Garrison Diversion Unit which has a potential of $32 million in new gross business volume for the Greater Valley City Trade area.

"5) Barnes County will share, along with all counties in the Conservancy District, the benefits of an increase in overall gross business volume and personal income from the Garrison Diversion Unit.

.    .    .    .    .

"NOW, THEREFORE, BE IT RESOLVED, that the Board of Directors of the Garrison Diversion Conservancy District at a meeting duly assembled at Carrington, North Dakota, this 24th day of October, 1979, that this Board after having considered all evidence in support of and in opposition to the petition submitted to it by the County Commissioners of Barnes County, North Dakota, requesting that said county be excluded from the Garrison Diversion Conservancy District

2. A verbatim record was made and a transcript prepared and introduced at the trial in the district court as Exhibit No. 4. Although none of the witnesses were sworn, and no witnesses were cross-examined, the procedures followed at the administrative hearing were consented to and no objection has been raised thereto.

does hereby determine that because Barnes County will be benefited in part through the development of the Garrison Diversion Unit, there is no basis under law for the exclusion of said county from the Garrison Diversion Conservancy District and, therefore, does hereby deny the petition of the Board of County Commissioners of Barnes County for the exclusion from the Garrison Diversion Conservancy District . . . . "

As authorized by § 61–24–17, NDCC,[3] Barnes County appealed to the district court where the matter was treated as an "original" suit and tried "de novo without a jury," pursuant to that part of § 61–24–17 which provides:

"The appeal shall be docketed as any cause pending in district court is docketed and thereupon the court shall have and exercise original jurisdiction and shall hear and determine the cause de novo without a jury."

Witnesses not heard by the Conservancy District at the administrative hearing testified at the trial in district court and issues not raised at the administrative hearing were raised in the district court trial.

The trial court prepared 111 findings of fact and 20 conclusions of law based upon the evidence and the issues before it. Many of the findings of fact and some of the conclusions of law relate to the wisdom of the North Dakota State Legislature in including Barnes County in the Conservancy District, and the wisdom of the Congress of the United States in approving a program for the diversion of Missouri River waters in North Dakota. Others were independent determinations by the trial court that Barnes County will receive no direct or indirect benefits from the establishment of the Garrison Diversion Unit.

We are basically only concerned with the trial court conclusion of law number 18 which indicates that, as a matter of law, the decision of the Conservancy District was arbitrary and capricious and unsupported by substantial evidence. The same principle applies here as when our review is pursuant to the Administrative Agencies Practice Act (Ch. 28–32, NDCC). As we said in the case of *North Dakota Real Estate Commission v. Allen*, 271 N.W.2d 593, 595 (N.D. 1978):

"... in making our decision, we must look to the record compiled before the Commission itself, rather than to the findings of the district court."

We must first consider the appropriate scope of review for both the district court and for this court when there is an appeal under the provisions of § 61–24–17, NDCC, first to the district court and then to this court. The language of § 61–24–17, NDCC, in describing the scope of the judicial review authorized, is similar in all significant respects to the language of § 11–11–43, NDCC.[4] There is a directive in each that a de novo hearing be held and a de novo determination be made. Section 11–11–43 does not direct the trial court to "exercise original jurisdiction."

Recently we said that:

"In considering the scope or nature of appellate review in a case of this type, we must keep in mind the fact that we are

3. "61–24–17. Appeal from orders of district board.—An appeal from an order of the board of directors of the conservancy district denying a petition for exclusion may be taken to the district court of the petitioning county. The appeal, provided for herein must be taken within thirty days after the order of the district board has been filed with the secretary thereof. The appeal shall be taken by serving notice of appeal upon the secretary of the district. The appeal shall be docketed as any cause pending in district court is docketed and thereupon the court shall have and exercise original jurisdiction and shall hear and determine the cause de novo with-

out a jury. An appeal to the supreme court may be taken by the petitioning county or by the conservancy district, from any judgment entered therein in district court, and from any order of said court if an appeal would lie from such order if entered by the court in a civil action."

4. "11–11–43. Appeals docketed and tried de novo.—All appeals taken from decisions of a board of county commissioners shall be docketed as other causes pending in the district court and shall be heard and determined de novo."

examining the act of a coordinate branch of the government in a field in which it has paramount authority." *Shaw v. Burleigh County*, 286 N.W.2d 792, 795 (N.D. 1979).

In discussing the evolution of de novo review by trial courts and by this court of administrative determinations, we said in *Shaw, supra*, that we had allowed the trial court to take testimony anew for the practical reason that no record was available of the proceedings before the administrative body. Merely because it is necessary to take testimony provides no basis for a different scope of review nor for a judge to substitute his judgment for that of the administrative agency. *See Munch v. City of Mott*, 311 N.W.2d 17 (N.D.1981). Because of the doctrine of separation of powers (see Article VI, § 10, North Dakota Constitution), all courts must exercise restraint in reviewing administrative determinations. *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D.1979).

In *Geo. E. Haggart, Inc. v. North Dakota Work. Comp. Bur.*, 171 N.W.2d 104, 112 (N.D.1969), we defined separation of powers by a quotation from 2 Am.Jur.2d Administrative Law, § 613, as follows:

"Generally, the legislature is precluded from imposing nonjudicial powers upon the courts, and the doctrine of the separation of powers prohibits the legislature from providing for a review which is too intensive—a review which in fact would constitute the delegation of nonjudicial functions to the judiciary. Upon review of action of an administrative agency, the court is confined to determination of judicial as distinguished from administrative questions, and the very nature of the judicial function itself limits judicial review of action administrative or legislative in nature."

Ordinarily, determinations of an administrative body are presumed to be correct and valid. *In re Superior Service Company*, 94 N.W.2d 84, 88–89 (N.D.1959). Courts do not have jurisdiction to decide administrative questions. *Application of Northern States Power Company*, 171 N.W.2d 751, 755 (N.D.1969).

■ It is not the function of the judiciary to act as a super board, substituting its judgment for that of the administrator whose decision is being reviewed. See *Soo Line Railroad Company v. City of Wilton*, 172 N.W.2d 74 (N.D.1969), and *Appeal of Johnson*, 173 N.W.2d 475, 482 (N.D.1970).

■ To be consistent with the precedents thus established, it naturally follows that where a transcript of the proceedings before the administrative agency is available, it is an encroachment on the executive function by the judiciary to rehear the testimony or to hear different testimony and to redetermine the matter on that testimony. To the extent that the statutes may be construed to permit trial courts to encroach upon administrative agency functions, they are unconstitutional.

■ It was error for the trial court to rehear the evidence and to hear new evidence not heard by the Conservancy District under the circumstances in this case, where a verbatim transcript of the proceedings before the Conservancy District was available and unchallenged.

■ The function of this court is to "independently determine the propriety of the Board's decision without according any special deference to the district court's review." *Shaw v. Burleigh County, supra*, 286 N.W.2d at 797. Accordingly, we are not obligated to give due regard to the findings of fact made by the trial court as we are in instances where Rule 52(a), NDRCivP, applies. Instead, "this court performs essentially the same function as the district court, and is governed by the same scope of review." *Shaw v. Burleigh County, supra*, 286 N.W.2d at 797.

In syllabus 5 of *Soo Line Railroad v. City of Wilton, supra*, we said that the province of the court was not to substitute its judgment for that of the administrative body but to determine:

First, whether or not the administrative agency was within its jurisdiction;

Second, whether or not it was mistaken as to the applicable law;

Third, whether or not it acted arbitrarily, oppressively, or unreasonably; and

Fourth, whether or not there was substantial evidence to support or justify its determination. (Since the 1977 amendment to § 28–32–19(5), NDCC, the fourth question is whether or not the determination is supported by a preponderance of the evidence. *See Power Fuels, Inc. v. Elkin, supra.*)

As we understand the argument, it is not contended that in denying the exclusion of Barnes County from the Conservancy District, the Conservancy District acted without jurisdiction or that the Conservancy District was mistaken as to the applicable law. The statutes give the Conservancy District jurisdiction. Section 61–24–16(1), NDCC. If there is any law that was mistakenly applied, it has not been called to our attention.

Barnes County contends in this court, however, that the Conservancy District, in finding that Barnes County will be benefited by the establishment of the "Garrison Diversion Unit," acted arbitrarily, oppressively, or unreasonably and that there was not substantial evidence to support or justify the determination that Barnes County will be benefited by the establishment of the "Garrison Diversion Unit." These questions should have been determined by the trial court from the record of the proceedings before the Conservancy District. Because, in this court, we are again reviewing the determination of the Conservancy District rather than the determination of the trial court, we look primarily to the record of the proceedings had before the Conservancy District.

The argument on these questions, however, involve to a considerable extent the definition of "Garrison Diversion Unit," and we are compelled to resort to the record made in the district court to evaluate this argument. When the North Dakota Legislative Assembly in 1955 used the language permitting the exclusion of a county from the conservancy district if it is not directly benefited by the establishment of the Garrison Diversion Unit, there was no clearly defined "Garrison Diversion Unit." See House Document No. 325, 86th Congress, Second Session, dated February 4, 1960. The term "Garrison Diversion" had been used as far back as the early 1920's in connection with proposed diversion of Missouri water to central and eastern North Dakota from a point near the city of Garrison, North Dakota. Otherwise, the source of the term "Garrison Diversion Unit" has not been pointed out to us in this case.

At the time that a master contract was signed on January 26, 1966, between the United States and the Conservancy District, the term "Garrison Diversion Unit" had been more fully developed but was still only a concept and not a project. House Document No. 325, *supra,* referred to Garrison Diversion Unit as a "250,000-acre (irrigation) project," and the initial phase of a project supplying "irrigation water to over one million acres of land in North and South Dakota."

There is evidentiary support in the record made of the administrative hearing for the Conservancy District's conclusion that approximately 32,000 acres of land will be provided water for irrigation in Barnes County as a part of the ultimate "Garrison Diversion Unit." It must be acknowledged that there was no assurance in 1955 when the Legislature placed Barnes County in the Conservancy District, nor in 1966 when the master contract was signed, nor even today, that the project will soon or ever materialize to the extent that Barnes County will have 32,000 acres of irrigated land as a result of Garrison Diversion. Even though some benefits to Barnes County may be speculative at this time, they are no more speculative now than when the Legislature included Barnes County in the Conservancy District on the theory that it was in the area benefited. Barnes County's benefits are no more speculative than benefits to any of the other counties in the Conservancy District as far as irrigated acres are concerned.

Another contention has been made that Barnes County will not benefit from future

municipal and industrial water through the Garrison Diversion Unit. Testimony was presented to the Conservancy District by a city spokesman that Valley City, which presently is adequately supplied by water from the Sheyenne River and Bald Hill Reservoir, has made application for a future water supply through the Garrison Diversion Unit, and anticipates a benefit therefrom.

Although disputed, there was credible evidence before the Conservancy District showing that problems relating to contamination of international waters are problems in science which will be or have been solved. This does not indicate that the Conservancy District acted arbitrarily, oppressively, or unreasonably in concluding that Barnes County will be benefited by future municipal and industrial water from the Garrison Diversion Unit.

A significant point of contention raised by Barnes County is that there will be no economic benefits, or only remote and speculative economic benefits, to Barnes County from the establishment of the Garrison Diversion Unit. The testimony at the Conservancy District hearing was divided. As in other cases, at administrative hearings, the credibility of the testimony is for the trier of the facts, the administrative agency itself. It is not arbitrary and unreasonable to accept one opinion over another.

The conclusion of the Conservancy District that Barnes County will be benefited by the establishment of the Garrison Diversion Unit was (1) within its jurisdiction; (2) made pursuant to applicable law; (3) not arbitrary, oppressive, or unreasonable; and (4) supported by a preponderance of the evidence. Whether or not the district court or this court believes that Barnes County should be excluded is not the question for consideration.

People's emotions are involved and a considerable argument was made before the trial court (but strangely not at the Conservancy District hearing) as to the nature of benefits that must be shown to justify retaining a county in the Conservancy District against its will. It is argued that Barnes County citizens have been taxed approximately $250,000 for the Conservancy District since 1965, and it is averred that consequently there are no "net" benefits. In the same vein, it is further contended that plans by the United States Fish and Wildlife Agency to acquire Barnes County land in mitigation of the destruction of wildlife habitats in other counties is a detriment that more than offsets the economic benefits to Barnes County that can be claimed.

Garrison Diversion and all its complexities and problems are not going to be settled in this suit. Legislative matters should be resolved in the Legislature, not in the courts. If there are amendments to the Master Contract or to the statutes that adversely affect Barnes County's rights, they ought to be challenged more specifically and directly, rather than in the oblique manner in which the issues are raised in this case. In this court's view, the Master Contract is an enforceable agreement which is subject to the ordinary contract law. Provisions from Acts of Congress and the laws of the State of North Dakota may be applicable to any attempt to alter the status quo. If enforceable, the limitation applicable to exclusion of a county found in § 61–24–16(4), NDCC, requiring consent of the United States and conditional exclusions, appears to effectively destroy any consideration of Barnes County's argument on "net" benefits, as well as its argument on mitigation.

The rejection by the Conservancy District of the petition of Barnes County was not, under the circumstances, arbitrary or capricious. The Conservancy District acted within its jurisdiction, applied the proper law, and its determination is supported by a preponderance of the evidence. The judgment of the district court reversing the determination of the Garrison Diversion Conservancy District and permitting Barnes

County to withdraw from the District is reversed. The determination of the Garrison Diversion Conservancy District is affirmed. The case is remanded to the district court for entry of judgment affirming the determination of the Garrison Diversion Conservancy District.

Because significant public issues are involved, each party should pay its own costs in the proceedings.

ERICKSTAD, C. J., VANDE WALLE, J., and BACKES and HODNY, District Judges, concur.

BACKES and HODNY, District Judges, sitting in place of PAULSON and SAND, JJ., disqualified.