TRIANGLE OILFIELD SERVICES,
INC., Plaintiff and Appellant,

v.

Bruce HAGEN, Leo M. Reinbold and Dale
Sandstrom, as members of the North
Dakota Public Service Commission,
and Matador Service, Inc., Getter
Trucking, Inc., Paraffin Service, Inc.,
and Power Fuels, Inc., Defendants and
Appellees.

Civ. No. 10892.

Supreme Court of North Dakota.

Aug. 19, 1985.

Crockett & Anderson, Fargo, for plaintiff and appellant; argued by Richard P. Anderson, Fargo.

Daniel S. Kuntz, Asst. Atty. Gen., and Ray H. Walton, Commerce Counsel, Public Service Commission, Bismarck, for defendant and appellee North Dakota Public Service Commission; argued by Ray H. Walton, Bismarck.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for defendant and appellee Matador Service, Inc.; argued by R.W. Wheeler, Bismarck.

McIntee & Whisenand, Williston, for defendants and appellees Getter Trucking, Inc. and Paraffin Service, Inc.; argued by Fred E. Whisenand, Williston.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendant and appellee Power Fuels, Inc.; argued by Warren Albrecht, Jr., Bismarck.

MESCHKE, Justice.

Triangle Oilfield Services, Inc. (Triangle) appeals a district court judgment affirming a decision of the North Dakota Public Service Commission (PSC) denying Triangle's application for a certificate of public convenience and necessity. We affirm.

Triangle had been transporting liquid commodities under lease to Getter Trucking, Inc. (Getter) since January 1983. On November 15, 1983, Triangle filed with the PSC an application for a special certificate of public convenience and necessity to authorize transportation of:

"Liquids used in or in connection with the discovery, development and production of natural gas and petroleum and their products and by-products;

to, from and within Williams, McKenzie, Mountrail, Divide, Burke, Billings, Dunn and Golden Valley Counties, North Dakota,

*"RESTRICTION:* Restricted against the transportation of crude oil (except crude oil used as a drilling or development fluid or crude oil requiring movement between pits and/or production tanks) and further restricted against the transportation of refined petroleum products from refineries and pipeline terminals."

Getter, Matador Service, Inc. (Matador), Paraffin Service, Inc. (Paraffin), and Power Fuels, Inc. (Power Fuels), all certificated carriers, opposed the application. After hearing, the PSC denied the application on April 10, 1984. The district court affirmed.

Triangle raises the following issues:

"1. Whether the commission's findings as to the adequacy of the existing service are supported by a preponderance of the evidence.

"2. Whether the commission failed to make required findings on material issues.

"3. Whether the commission's decision denying this application is in accordance with the law and is consistent with its policies as established in other commission decisions.

"4. Whether the commission's conclusion that the granting of the application would be inconsistent with the public interest is supported by the record evidence.

"5. Whether the commission's conclusion that the commission has attempted to allow increased competition without greatly expanding the existing equipment fleet is consistent with its decision denying this application."

Getter, Paraffin, and Matador assert that Triangle may not secure a certificate of public convenience and necessity through proof of its operations while under lease to Getter. Matador also asserts that Triangle's operations while under lease to Getter were unlawful and that evidence of those

operations cannot, therefore, be utilized to establish public convenience and necessity. We recently determined that the services of an applicant while under lease to a certificated carrier can be recognized by the PSC in characterizing the applicant as the provider of services. *Matador Service, Inc. v. Missouri Basin Well Service, Inc.*, 367 N.W.2d 749 (N.D.1985) (decided after the briefs in the instant case were filed). We also determined in that case that, even if an applicant's operations were unlawful, the PSC was not thereby precluded from granting the applicant a certificate of public convenience and necessity.

■ We exercise restraint in reviewing the findings of an administrative agency. *Asbridge v. North Dakota State Highway Com'r*, 291 N.W.2d 739 (N.D.1980). Where the subject matter is of a technical nature, the expertise of the administrative agency is entitled to respect.

"Ordinarily, determinations of an administrative body are presumed to be correct and valid. *In re Superior Service Company*, 94 N.W.2d 84, 88–89 (N.D.1959). Courts do not have jurisdiction to decide administrative questions. *Application of Northern States Power Company*, 171 N.W.2d 751, 755 (N.D. 1969).

"It is not the function of the judiciary to act as a super board, substituting its judgment for that of the administrator whose decision is being reviewed. See *Soo Line Railroad Company v. City of Wilton*, 172 N.W.2d 74 (N.D.1969), and *Appeal of Johnson*, 173 N.W.2d 475, 482 (N.D.1970)." *Barnes County v. Garrison Diversion Conservancy District*, 312 N.W.2d 20, 25 (N.D.1981).

Section 28–32–19, N.D.C.C., provides:

"*28–32–19. Scope of and procedure on appeal from determination of administrative agency.* The court shall try and hear an appeal from the determination of an administrative agency without a jury and the evidence considered by the court shall be confined to the record filed with the court.... After such hearing, the court shall affirm the decision of the agency unless it shall find that any of the following are present:

1. The decision or determination in not in accordance with the law.

2. The decision is in violation of the constitutional rights of the appellant.

3. Provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions and decision of the agency are not supported by its findings of fact...."

Thus, the district court, and this Court, pursuant to § 28–32–21, N.D.C.C., "is required to affirm an administrative agency decision unless one of the six items listed in § 28–32–19, N.D.C.C., is present." *In re Annexation of a Part of Donnybrook Public School Dist. No. 24*, 365 N.W.2d 514, 519 (N.D.1985).

"... We do not make independent factual findings or substitute our judgment for that of the agency, but determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record. *Application of Skjonsby Truck Line, Inc., supra; Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D. 1979)." *Matador Service, Inc. v. Missouri Basin Well Service, Inc., supra*, 367 N.W.2d at 752.

I

■ Asserting that "the record is replete with evidence as to the inadequacy of the existing carriers to meet the public demand for vacuum equipped trucks on short notice," Triangle contends that the following findings of fact made by the PSC are contrary to the preponderance of the evidence:

"XVIII

"There has been no showing that existing carriers cannot service the demand of the shippers requiring the transportation of water for drilling or the disposal of production water.

"XIX

"None of the shipper witnesses who appeared in support of the application have had any complaints in securing adequate trucking services for the transportation of liquids in the State of North Dakota for a number of months...."

Initially, we note that Triangle's application was not limited to securing authority "to meet the public demand for vacuum equipped trucks on short notice." We have reviewed the record and conclude that the foregoing findings are supported by a preponderance of the evidence.

Witnesses who appeared in support of Triangle's application testified about the need for prompt access to trucks equipped with vacuum pumps for cleaning up spills, transferring liquids, and restoring reserve pits. Those and other witnesses testified that transportation requiring vacuum pumps represents a relatively small portion of the total liquid transportation requirements of the oil industry.

Some of the testimony by witnesses supporting Triangle's application related to isolated or insubstantial instances of inability to secure service from one carrier or another, and to complaints about the service provided. That testimony was countered by testimony of many of the same witnesses that they "haven't had any problem with a lack of trucks or lack of service for transporting liquids"; they have not "had any trouble in the past securing sufficient quantities of vacuum trucks"; they have "no need for liquid transportation that is not being met satisfactorily"; and by the protestants' testimony about reduced demand for water hauling services, lower revenues, and equipment idled for lack of demand. We conclude from our review of the record that "a reasoning mind reason-

ably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214, 220 (N.D.1979).

II

■ Triangle asserts that the extent of its past service pursuant to the Getter lease, the support of witnesses for its vacuum pump service, the effect of the terminability of the Getter lease upon 30 days' notice, and its investment in equipment and facilities are material issues of fact upon which the PSC was required to, but did not, make findings. We disagree.

The PSC made findings (1) that Triangle has been transporting commodities under lease to Getter for which it now seeks its own authority; (2) that Triangle maintains a terminal facility and employs 13 to 15 individuals; (3) that the lease on its face is cancelable on 30 days' notice; (4) that there is no substantial evidence proving Triangle's supposition that it could lose its lease if the application is not granted; (5) that recited testimony of supporters of the application relating the extent of service provided to them by Triangle; (6) that the shippers supporting Triangle's application were primarily concerned with the availability of vacuum type tank trucks; and (7) that the needs and preferences testified to can continue to be met through Triangle's existing lease arrangement with Getter. Thus, the PSC did make findings relating to all of the matters cited by Triangle, except with regard to Triangle's investment in equipment and facilities. It does not appear that there is any dispute about the extent of Triangle's investment. The PSC did consider the evidence presented by Triangle and made adequate findings. As we recently stated in *In re Annexation of a Part of Donnybrook Public School Dist. No. 24, supra,* 365 N.W.2d at 524:

"... No productive purpose would be served by remanding these petitions to the State Board for the purpose of making additional findings on matters about which there is no dispute. We discern no

possibility that the making of additional findings would change the results of the State Board's actions on these petitions. It is enough that the findings made by the State Board are supported by a preponderance of the evidence and that they support its conclusions and decisions."

## III

■ Relying on the PSC's grant of a certificate upon a similar application filed by Missouri Basin Well Service, Inc. (*affirmed, Matador Service, Inc. v. Missouri Basin Well Service, Inc., supra*), Triangle asserts that the PSC's decision is not in accordance with the law and is inconsistent with established PSC policies. Triangle argues that "[t]he two applications—Missouri Basin and Triangle—are mirror proceedings in all respects, including the time frame in which they were filed. Yet, the Conclusions in each are diametrically opposite with no rational explanation or effort to distinguish the two proceedings."

The two applications were not "mirror proceedings." Differences between the two proceedings may be partially summarized as follows: (1) the application, hearing, and decision in Triangle each occurred approximately six months later than in the *Basin* case; (2) while three counties were common to both applications, the geographical area predominantly sought to be served by Basin's application was the southwestern portion of North Dakota and Triangle's application was for the northwestern portion; (3) there were more certificated carriers at the time of the Triangle decision than at the time of the *Basin* decision; (4) the evidence differed as to the need for the proposed service and as to adverse impact upon the protestants in the two proceedings; (5) evidence of a decline in activity in the petroleum industry and, therefore, of reduced need for the proposed service was more pronounced by the time of the Triangle decision than at the time of the *Basin* decision; and (6) Basin was losing money while under lease to Getter, while counsel for Triangle conceded at oral argument that Triangle was operating at a modest profit while under lease to Getter.

While we are troubled by the PSC's failure to articulate more clearly the bases for denying Triangle's application, which at first blush appears to be quite similar to Basin's application which was granted by the PSC only a few months earlier, we are able to understand why the PSC decided the two applications differently. While findings and conclusions more clearly articulating a rationale for distinguishing two facially similar applications would have aided the process of judicial review, we conclude that the PSC's findings and conclusions are adequate to apprise us of its reasoning. The denial of Triangle's application is not contrary to the law, nor is the decision inconsistent with that in *Basin.*

## IV

In its conclusions of law, the PSC stated:

"III

"The Applicant did not make any showing that Public Convenience and Necessity require the granting of this application.

"IV

"The granting of the application will not be consistent with the public interest.

"V

"Public Convenience and Necessity does not require the granting of the application and the application should be denied."

■ Triangle argues that the PSC's conclusion that Triangle failed to establish public convenience and necessity is not supported by the underlying record evidence. The PSC's determination with regard to the public convenience and necessity is sustained by its findings of fact on the adequacy of the existing service, decline in demand for liquid transportation service, adverse impact on the protestants, decline in protestants' revenues, idling of equipment

due to lack of demand and increased numbers of carriers. Those findings of fact are supported by a preponderance of the evidence. "The issue of public convenience and necessity is ordinarily one of fact and the determination of what is consistent with the public convenience and necessity is one which is peculiarly for the determination of the regulatory authority." *Matador Service, Inc. v. Missouri Basin Well Service, Inc.*, 367 N.W.2d 749, 754 (N.D. 1985). We do not substitute our judgment for that of the agency. *In re Application of Nebraska Public Power Dist.*, 330 N.W.2d 143 (N.D.1983); *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D.1979).

V

■ After noting growth and expansion in the petroleum industry, a recent decline in activity in the petroleum industry, and several extensions and grants of carrier authority since January 1, 1983, the PSC stated in conclusion of law II:

"... We have attempted to allow this increased competition without greatly expanding the existing equipment fleet so as not to create an unnecessary degree of economic instability within the industry. The current level of oilfield activity does not permit an unlimited expansion of motor carrier authorities without creating some severe adverse effects within the industry. The Protestant's recent decline in revenues, equipment utilization and personnel indicates that further expansion of the industry may be unwarranted at this time...."

Triangle argues that the "conclusion is accurate, but is unrelated to the record" because Triangle already is a competitive factor and "issuance of a certificate to Triangle would not 'greatly expand the existing equipment fleet,' as Triangle would simply utilize the very same equipment now committed to Getter." Triangle's president, however, testified that if the application were granted, he expected to "add a couple of trucks ... And a terminal probably located in Tioga." Thus, the decision to deny Triangle's application is consistent with the conclusion and the conclusion is related to the record.

For the reasons stated, the judgment is affirmed.

ERICKSTAD, C.J., LEVINE, J., and PEDERSON and ILVEDSON, Surrogate JJ., concur.

PEDERSON and ILVEDSON, Surrogate JJ., sitting in place of GIERKE and VANDE WALLE, JJ., disqualified.