**Glen DAVIS, Appellant,**

v.

**WILLIAMS COUNTY SOCIAL SERVICE BOARD and North Dakota Department of Human Services, Appellees.**

Civ. No. 880069.

Supreme Court of North Dakota.

Aug. 16, 1988.

Duane E. Houdek, Legal Assistance of North Dakota, Bismarck, for appellant.

Sidney J. Hertz Fiergola, Asst. Atty. Gen., Human Services Dept., Bismarck, for appellees.

GIERKE, Justice.

Glen Davis appeals from the district court judgment affirming the decision of the Department of Human Services to terminate food stamp benefits for 90 days. We reverse.

Glen Davis, his wife Dorothy and their two children were certified for food stamp benefits in May of 1986. Glen began working for Automated Maintenance Services in January of 1987. In February of 1987, Dorothy notified the Williams County Social Service Board that Glen was no longer employed with Automated Maintenance Services.

A provision in the food stamp regulations provides that a person is disqualified from receiving food stamp benefits if that person voluntarily quits his or her most recent job without good cause.[1]

Accordingly, on March 11, 1987, the county social service worker contacted Glen's employer to determine whether or not Glen voluntarily quit his job without good cause which would disqualify him from the food stamp program. The county social service worker was advised by the manager of Automated Maintenance Services that Glen quit his job. The county

---

1. Section 50–06–05.1, N.D.C.C., provides in part as follows:

"50–06–05.1. Powers and duties of the department. The department shall have the following powers and duties to be administered by the department through its state office or through regional human service centers or otherwise as directed by it:

\* \* \* \* \* \*

"18. To act as the official agency of the state in the administration of the food stamp program and to direct and supervise county administration of that program. Provided, however, that the department with the consent of the legislative council committee on budget may terminate the program should the rate of federal financial participation in ad-

ministrative costs provided under Public Law 93–347 be decreased or limited, or should the state or counties become financially responsible for all or a portion of the coupon bonus payments under the Food Stamp Act."

Accordingly, the North Dakota Department of Human Services is responsible for administering the food stamp program. Section 50–06–05.-1(18), N.D.C.C. The North Dakota Department of Human Services may terminate a person's food stamp benefits for voluntarily quitting any job without good cause. 7 U.S.C.A. § 2015(d)(1)(West 1988)(food stamp program eligibility disqualifications); see also North Dakota Department of Human Services Manual Section 430–11–23 (voluntarily quit).

social service worker did not verify this statement with Glen's supervisor, Gary Gilbertson, who was no longer employed at Automated Maintenance Services. Glen submitted to the Williams County Social Service Board a signed statement by Gary Gilbertson dated March 25, 1987, which explained that Glen did not quit but was fired. The county social service worker once again contacted the manager of Automated Maintenance Services who explained that a notation in Glen's personnel file indicated that Glen quit his job.

On March 19, 1987, the Williams County Social Service Board notified Glen that his food stamp case would be closed effective March 31, 1987, because in considering Glen's food stamp eligibility it had been determined that he voluntarily quit his employment without good cause. Glen appealed from the decision made by the Williams County Social Service Board claiming that he did not quit but was fired.

A hearing was held on August 6, 1987. On August 12, 1987, the hearing officer recommended that the decision of the Williams County Social Service Board to close the food stamp case be affirmed. On August 27, 1987, the executive director of the Department of Human Services issued a decision adopting the findings of the hearing officer and affirming the action taken by the Williams County Social Service Board.[2]

On September 24, 1987, Glen appealed to the district court. The district court issued a judgment on January 4, 1988, which affirmed the decision of the Department of Human Services. On February 26, 1988, Glen filed this appeal.

Glen contends on appeal that the agency's findings are not supported by the preponderance of the evidence and therefore he is not disqualified from receiving food stamp benefits.

Section 28-32-21 of the North Dakota Century Code provides in part as follows:

"28-32-21. Review in supreme court. The judgment of the district court in an appeal from a decision of an administrative agency may be reviewed in the supreme court on appeal in the same manner as provided in section 28-32-19, ..."

Thus, the scope of review of administrative agency decisions in both the district court and in this Court is governed by Section 28-32-19 of the North Dakota Century Code which provides as follows:

"28-32-19. Scope of and procedure on appeal from determination of administrative agency. The court shall try and hear an appeal from the determination of an administrative agency without a jury and the evidence considered by the court shall be confined to the record filed with the court. If additional testimony is taken by the administrative agency or if additional findings of fact, conclusions of law, or a new decision shall be filed pur-

2. The executive director of the North Dakota Department of Human Services made the following findings and decision:

*Findings of fact:* The evidence of record has been considered and appraised, and from the facts at issue, the following findings are made:

"(1) The appellant was the primary wage earner in the household working more than twenty hours per week.

"(2) The appellant was warned that his employment would be terminated if he did not show up for work.

"(3) The supervisor stated when employees missed work, the rest of the crew would join in and cover for the missing worker.

"(4) The appellant's personnel file with his former employer indicates he did not appear for work for four days and was considered to have quit his job, while the appellant's former supervisor testified that the appellant was

fired. Such testimony is in conflict with the official records of the employer, and the personnel file is found to represent the most accurate record of the reason for the appellant's termination.

"(5) The appellant's failure to show up for work, after having been warned by the supervisor of the consequences, is found to be an informed and volitional act on his part, and was without good cause. As such, it is found to be a *voluntary quitting of employment* within the scope and intent of the Food Stamp regulations.

*Decision:* The action taken by the Williams County Social Service Board, determining that the appellant had failed to show good cause for his quitting his most recent employment and imposing a 90-day disqualification from Food Stamp participation, was consistent with the Food Stamp regulations, and is affirmed."

suant to section 28–32–18, such evidence, findings, conclusions, and decision shall constitute a part of the record filed with the court. After such hearing, the court shall affirm the decision of the agency unless it shall find that any of the following are present:

"1. The decision or determination is not in accordance with the law.

"2. The decision is in violation of the constitutional rights of the appellant.

"3. Provisions of this chapter have not been complied with in the proceedings before the agency.

"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

"6. The conclusions and decision of the agency are not supported by its findings of fact.

"If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the decision of the court."

This Court, in *Matter of Prettyman*, 410 N.W.2d 533, 535–536 (N.D.1987), explained the scope of review in administrative appeals as follows:

"The courts must affirm an administrative agency decision unless one of the six items listed in § 28–32–19, N.D.C.C., is present. *Triangle Oilfield Services, Inc. v. Hagen*, 373 N.W.2d 413 (N.D. 1985); *In Re Annexation of a Part of Donnybrook Public School Dist. No. 24*, 365 N.W.2d 514 (N.D.1985). We exercise restraint in reviewing the findings of an administrative agency. *Triangle Oilfield Services, Inc. v. Hagen, supra*, 373 N.W.2d at 415. In reviewing the factual basis of administrative orders, there are three critical questions: (1) are the findings of fact supported by a preponderance of the evidence; (2) are the conclusions of law sustained by the findings of fact; and (3) is the agency decision supported by the conclusions of law? *American State Bank, Etc. v. State Banking Board*, 289 N.W.2d 222, 225–226 (N.D.1980). '[W]e do not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record.' *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D. 1979)."

Initially, we note that the record in the instant case discloses a conflict between the information contained in Glen's personnel file and the direct testimony of Glen's supervisor, Gary Gilbertson. A notation in Glen's personnel file indicated that Glen quit his job. It is from this notation that the manager of Automated Maintenance Services based his statement that Glen quit his job. While it was undetermined as to who made the notation on Glen's personnel file, it is clear that Glen's supervisor, Gary Gilbertson, did not make the entry. In fact, when questioned at the hearing by Duane Houdek, Glen's attorney, Gary Gilbertson testified as follows:

"HOUDEK: Okay. Thank you. I have some questions for Mr. Gilbertson. State your name please.

"GILBERTSON: Gary Gilbertson.

"HOUDEK: Gary, did you work for AMS at one point?

"GILBERTSON: Yes sir.

"HOUDEK: At that time were you supervisor of Glen—

"GILBERTSON: Yes sir.

"HOUDEK: —Davis? Did you have the authority to fire him, hire him?

"GILBERTSON: Yes sir.

"HOUDEK: I understand that, that he reached a point where you terminated his employment with AMS?

"GILBERTSON: Yes.

"HOUDEK: Can you tell me how that happened?

"GILBERTSON: Well, he didn't show up for work for four days and he did tell me that one morning that he was sick. And I said that if you don't come to work you haven't got a job. I fired him is what I did.

"HOUDEK: And was—did you fire him?

"GILBERTSON: Yes.

"HOUDEK: Is there any question in your mind that he quit?

"GILBERTSON: None, no. He didn't quit, I fired him. I told him not to come to work.

"HOUDEK: Okay. It stated in the personnel records at AMS that, well one person says he quit. He didn't show up for work. Did you fill out that record?

"GILBERTSON: No sir. I called my boss. And that day I was going to fire him I said if he isn't here today, I'm going to fire him.

"HOUDEK: Okay, and did you then tell him he didn't show up, or something like that?

"GILBERTSON: Well, I probably told him afterwards that he didn't show up, but he knew that I told him—I just told him two hours before I fired him that I was going to fire him. I don't know what they're, what they're trying to prove, but—

"HOUDEK: Okay. But at any rate, there's no question but that—

"GILBERTSON: No question in my mind. I fired him."

Accordingly, Gary Gilbertson maintains that Glen was fired and did not quit his employment.

The county social service worker testified at the hearing that Gary Gilbertson's statement that Glen was fired was not accepted and the food stamp case was closed, effective March 31, 1987. When questioned whether there was any reason to disbelieve Gary Gilbertson's statement that Glen was fired, the county social service worker replied, "I guess just the fact that the personnel file has not been changed." Gary Gilbertson testified at the hearing that he had tried to contact someone about changing the notation in Glen's personnel file but was unable to do so.

After review of the record, we do not believe that a reasoning mind could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record.

We conclude that the Department of Human Services' finding of fact that Glen voluntarily quit his employment is not supported by a preponderance of the evidence. Accordingly, the judgment of the district court affirming the decision of the Department of Human Services is reversed and the case is remanded to the Department of Human Services for appropriate action in accordance with this opinion.

ERICKSTAD, C.J., and MESCHKE, J., concur.

VANDE WALLE, Justice, concurring in result.

I concur in the result set forth in the majority opinion. This case is the reverse of the parody in which an employee who is in the process of being fired declares to the employer, "You can't fire me—I quit!" If this were simply a case of an unexplained absence and whether Glen quit before he was fired, I would affirm, for I believe on the basis of the testimony quoted in the majority opinion that an employer would be justified in concluding that an employee who does not report for work for that period of time has quit employment, whether or not a foreman might, in a blustery manner, declare that the employee did not quit but rather that "I fired him is what I did." Here, however, there is additional uncontradicted evidence that the employee did report in ill but was told that he nevertheless must report for work or he would be fired. It may seem strange that, today, employment positions exist in which an employee's absence from work due to bona fide illness results in his being discharged, but there is nothing in the record of this most informal hearing to refute that evidence.

Therefore, as the record before us indicates, an employee who is told that he will be fired if he does not return to work, whether or not he is ill, and who does not return to work because of illness, is justified in assuming he has been fired. Absent any evidence other than an unexplained notation in the employer's records to the contrary, I do not believe any conclusion other than that the employee has been fired is reasonable. On this narrow record I therefore agree with the result reached by the majority opinion.

LEVINE, J., concurs.