**Jackie PERMAN, Appellee,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellant.**

**Civ. No. 890318.**

Supreme Court of North Dakota.

July 3, 1990.

---

Keith A. Wolberg (argued), Evans & Moench, Ltd., Bismarck, for appellee.

Dean J. Haas (argued), Asst. Atty. Gen., North Dakota Workers Compensation Bureau, Bismarck, for appellant.

MESCHKE, Justice.

The North Dakota Workers Compensation Bureau appealed from "the decision of the District Court dated August 21, 1989," [1] reversing the Bureau's decision to deny Jackie Perman's claim for disability benefits. We reverse and remand for entry of a judgment affirming the Bureau's decision.

On February 27, 1987, Perman injured her back while employed as a clerical assistant by the North Dakota Public Employees Retirement System (PERS). The Bureau accepted her claim, covered Perman's medical expenses, and paid her disability benefits. On December 17, 1987, the Bureau found that "the evidence does not substantiate a continued disability", ordered continued payment of Perman's medical expenses, and denied any other benefits.

---

1. On August 21, 1989, the district court issued a "MEMORANDUM AND ORDER":

It would be redundant for the Court to list the many reasons and the evidence as to why the Bureau decision is reversed.

Suffice it to say that Appellant's counsel's brief is thorough and accurate. The Court agrees with Mr. Wolberg.

The Bureau's order is reversed and the matter remanded for an order of total disability from the time of her lost employment.

Findings of fact, conclusions of law, and order for judgment were prepared by Perman's counsel and were signed by the court on October 13, 1989. The judgment was entered on October 13, 1989. We treat the appeal as one from the "subsequently entered consistent judgment." *State v. Klocke,* 419 N.W.2d 918, 920 (N.D.1988). We have jurisdiction of the appeal.

Perman requested a rehearing and the Bureau held an evidentiary hearing. The Bureau made findings of fact:

### IX.

Claimant has also been examined by Dr. Charles Dahl and Dr. Roger F. Kennedy. Dr. Dahl indicated that he believed the claimant had 'a disrupted disc' but not extruded. The physician contemplated surgery.

### X.

Neurosurgeon Dr. Kennedy also examined the claimant and indicated that he found no marked objective findings to substantiate a herniated disc, which impinges upon a nerve root requiring surgery. Dr. Kennedy indicated in his deposition that he would release claimant to return to work with the limitation that the claimant not frequently lift over 25 to 30 pounds or do prolonged sitting or bending. The physician indicated that the claimant was able to infrequently lift 40 to 50 pounds and was able to do other than repetitive bending. The physician indicated that claimant would be able to sit for 45 minutes at a time.

### XI.

Dr. Dahl has indicated in a letter that the claimant was impaired in returning to work. The physician does not provide the necessary information to assess the reasons for his opinion.

\*　\*　\*　\*　\*　\*

### XIV.

Vocational counselor, Diane Offerdahl, testified at the hearing and indicated that there are numerous clerical jobs that the claimant is qualified to perform with her work history and transferable skills which are of a light to sedentary nature, and within the restrictions and limitations given by Dr. Kennedy. Dr. Kenne-

dy has released claimant to perform these light sedentary jobs.

### XV.

The greater weight of the evidence indicates that claimant is medically·released to perform gainful employment such as she held prior to her injury. The evidence indicates that the claimant is not motivated to return to work but rather sees herself continuing with schooling and workers compensation benefits rather than returning to work.

### XVI.

Claimant's testimony about her work search and contact with Job Service is unsubstantiated by any other evidence. Claimant did not go out on any interviews. Claimant was unable to specifically identify any individuals to whom she had talked about employment. The bureau finds that the claimant made an apathetic work search. Claimant has failed to prove that her work injury has lead employers to refuse her employment or has in any way precluded her from obtaining employment. Rather, claimant has indicated that she has considered herself disabled beyond the medical findings.

The Bureau concluded that Perman "failed to prove that she remains disabled as a direct result of the injury dated February 27, 1987." The Bureau ordered (1) that payment of Perman's medical expenses continue; (2) that Perman "shall remain eligible for permanent partial impairment benefits should medical evidence so indicate"; and (3) that further benefits be denied "absent a significant change in medical condition due to the work injury."

Perman appealed to the district court, which reversed the Bureau's decision and remanded for an order of total disability. The Bureau appealed a single question: Was Perman disabled from gainful employment by her injury? [2]

---

**2.** In *Froysland v. North Dakota Workers Compensation Bureau*, 432 N.W.2d 883 (N.D.1988), this court ruled in favor of a claimant by reversing to permit the claimant an opportunity to

cross-examine the Bureau's medical experts before termination of claimant's disability benefits. In doing so, we said: "If the Bureau terminates benefits, after initially accepting a claim

Ordinarily, determinations of an administrative body are presumed to be correct. *Barnes County v. Garrison Diversion Conservancy Dist.*, 312 N.W.2d 20, 25 (N.D.1981). NDCC 28–32–19 [3] governs the scope of judicial review of administrative agency decisions in both the district court and in this court. *Matter of Prettyman*, 410 N.W.2d 533 (N.D.1987).

The courts must affirm an administrative agency decision unless one of the six items listed in § 28–32–19, N.D.C.C., is present. *Triangle Oilfield Services, Inc. v. Hagen*, 373 N.W.2d 413 (N.D.1985); *In re Annexation of a Part of Donnybrook Public School Dist. No. 24*, 365 N.W.2d 514 (N.D.1985). We exercise restraint in reviewing the findings of an administrative agency. *Triangle Oilfield Services, Inc. v. Hagen, supra*, 373 N.W.2d at 415. In reviewing the factual basis of administrative orders, there are three critical questions: (1) are the findings of fact supported by a preponderance of the evidence; (2) are the conclusions of law sustained by the findings of fact; and (3) is the agency decision supported by the conclusions of law? *American State Bank, Etc. v. State Banking Board*, 289 N.W.2d 222, 225–226 (N.D.1980). [W]e

do not make independent findings of fact or substitute our judgment for that of the agency.

*Matter of Prettyman*, 410 N.W.2d at 535–536. We determine only whether the Bureau could have reasonably reached its factual determinations by the greater weight of all the evidence. *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D.1979). The scope of judicial review is thus limited.

■ We review the record compiled by the agency, but the analysis of the district court is entitled to respect if it is sound. *Domek v. North Dakota State Personnel Board*, 430 N.W.2d 339, 340 (N.D.1988). "Although the district court's analysis is entitled to respect, *Medcenter One v. Job Service*, 410 N.W.2d 521 (N.D.1987), on appeal, we review the decision of the Bureau, rather than that of the district court." *Holmgren v. North Dakota Workers Comp. Bureau*, 455 N.W.2d 200, 201 (N.D. 1990). Here, however, the district court's "analysis" consisted of three uninformative sentences:

It would be redundant for the Court to list the many reasons and the evidence as to why the Bureau decision is reversed.

and paying benefits, the claimant has the burden of proving his or her right to continue receiving benefits." *Id.* at 887. Which party had the burden of proof was not disputed in that case, nor was it disputed in this case. However, Professor Larson observes (1) that in some jurisdictions once a work-connected disability is established, there is a "presumption of continuance of that condition until the contrary is proved," which shifts "the burden of proof to the employer to prove change of condition" [3 *Larson's Workmen's Compensation Law* § 80.33(d) (1989) ]; and (2) that "[t]he burden of proof of showing a change in condition is normally on the party, whether claimant or employer, asserting the change" [*Id.*, § 81.33(c) ]. No question about the burden of proof was appealed in this case.

**3.** NDCC 28–32–19 says:

*Scope of and procedure on appeal from determination of administrative agency.* The court shall try and hear an appeal from the determination of an administrative agency without a jury and the evidence considered by the court shall be confined to the record filed with the court. If additional testimony is taken by the administrative agency or if additional find-

ings of fact, conclusions of law, or a new decision shall be filed pursuant to section 28–32–18, such evidence, findings, conclusions, and decision shall constitute a part of the record filed with the court. After such hearing, the court shall affirm the decision of the agency unless it shall find that any of the following are present:

1. The decision or determination is not in accordance with the law.

2. The decision is in violation of the constitutional rights of the appellant.

3. Provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions and decision of the agency are not supported by its findings of fact.

If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the decision of the court.

Suffice it to say that Appellant's counsel's brief is thorough and accurate. The Court agrees with Mr. Wolberg.

Thus, we are unable to give any deference to the district court's decision.

■ "It is well established that 'total disability' exists when a workman is unable, solely because of his job-related injury, to perform or obtain any substantial amount of labor in his particular line of work, or in any other for which he would be fitted." *Jimison v. North Dakota Workmen's Comp. Bureau*, 331 N.W.2d 822, 827 (N.D.1983). In *Jimison*, we concluded that a claimant who "is capable of engaging in many employment-related activities ... is not 'totally disabled'." 331 N.W.2d at 827. Similarly, in *Froysland v. North Dakota Workers Comp. Bureau*, 432 N.W.2d 883 (N.D.1988), and in *Olson v. North Dakota Workers Comp. Bureau*, 419 N.W.2d 894, 897 (N.D.1988), this court approved denial of disability status to claimants who were "able to perform many employment-related activities." We have recently said that "[i]t is not error for the Bureau to deny disability benefits to a person who is capable of performing employment-related activities and has the ability to return to gainful employment." *Hintz v. North Dakota Workers Comp. Bureau*, 450 N.W.2d 727, 729 (N.D.1990). The Bureau recognized in its brief, however, that disability involves a blend of two elements, medical or physical inability to perform work and inability to obtain work as a result of a compensable injury. *See generally*, 2 *Larson's Workmen's Compensation Law* § 57.00 *et. seq.* Both elements affect the determination of disability.

■ In Perman's clerical job with PERS, her duties included answering the telephone, putting pages in books, making photocopies, typing, stocking shelves, microfilming, filing, stuffing envelopes, and mailing. Perman's job enabled her to periodically change her position, alternately sitting, standing, or walking. Perman's job required her to occasionally lift from 35 to 65 pounds and to move boxes weighing 40 pounds.

Considering activities which might cause her physical harm or pain, Dr. Kennedy testified that he would release Perman for work within the following restrictions:

I would restrict her bending, I would restrict her lifting and restrict her sitting. In that sort of situation she probably could repeatedly lift 25 to 30 pounds, infrequently 40, maybe 50, and we usually restrict sitting to a matter of about 45 minutes.

Dr. Kennedy cautioned "against frequent bending rather than occasionally bending." Dr. Dahl wrote Perman's attorney that "she was, in fact, continuing to be impaired from this injury in returning to work." Dr. Kennedy agreed with that and still released Perman for clerical work.

Diane Offerdahl was a case manager with Professional Rehabilitation Management and a former vocational rehabilitation coordinator. She assisted people looking for work "by way of looking at their transferable skills and their work restrictions and their position and determining whether they are employable." Offerdahl testified (1) that the jobs Perman had held would be classified as "unskilled clerical work"; (2) that there are substantial numbers of such jobs in the metropolitan areas of North Dakota; (3) that Perman "would qualify for entry level clerical work"; (4) that clerical jobs are classified by physical demand characteristics, with sedentary work involving lifting up to 10 pounds, light work involving lifting 10 pounds frequently and 20 pounds maximum, and medium work involving up to 25 pounds frequently and 50 pounds maximum; (5) that there are "substantial numbers of these kinds of jobs in the sedentary to light nature that require unskilled levels in the North Dakota economy"; (6) that there are a substantial number of openings in these light and sedentary jobs at this time; (7) that "office work generally allow[s] a person to be able to sit and stand periodically"; and (8) that her company did not do a job search for Perman because "[i]t is my understanding that she desired to stay in school, prefer-

ring that over looking for work at this time."

Perman testified:

Q. Could you tell us what your work search consisted of after April of 1987?

*   *   *   *   *   *

A. I contacted Job Service and I talked to them. And I told them of my situation and my medical restrictions, and the guy started laughing at me and he told me to call vocational rehab. And I talked to—

Q. Who did you talk to at Job Service?

A. I have no idea.

Q. What did you tell the person at Job Service your restrictions were?

A. I told him no prolonged sitting or standing, no forward bending, no heavy lifting, no pushing or pulling.

*   *   *   *   *   *

Q. Are you telling us that Job Service wouldn't help you out looking for work?

A. They didn't know what to do. They just kind of chuckled and said, I think you better get a hold of vocational rehab.

*   *   *   *   *   *

Q. Did you ever go out on any interviews for work?

A. No.

Q. Other than going to Job Service, did you do anything else to look for work?

A. I talked to a man down at vocational rehab, who more or less agreed with what Job Service had said. He said, I don't have anything for you at this time with those restrictions.

*   *   *   *   *   *

Q. Did you ever go and attempt to look for work door to door, making applications?

A. I don't think I did, no.

*   *   *   *   *   *

Q. But you haven't tried any work since April of '87?

A. No.

■ Perman argues that "[t]he Bureau's reliance upon Dr. Kennedy, to the exclusion of Dr. Dahl, is half-hearted and unjustified" and that "[t]he Bureau completely ignores Dr. Kennedy's final conclusion" in which he agreed with Dr. Dahl's statement that Perman "was, in fact, continuing to be impaired from this injury in returning to work." Nevertheless, there is a reasonable difference between being "impaired ... in returning to work" and being "unable to perform or obtain" work. It is the Bureau's domain to measure that difference because "the Bureau is the appropriate fact-finder in compensation cases and as such has the duty to weigh and resolve conflicting evidence." *Froysland*, 432 N.W.2d at 888. We conclude that the Bureau fairly measured and weighed the evidence on Perman's physical ability to perform work.

Perman contends: "Without the injury, her chances of further employment would have been good. With the injury, they virtually do not exist." On the contrary, evidence showed that Perman qualified for clerical openings. Sedentary-to-light categories of clerical work fall within Perman's physical limitations. There was little evidence "to establish unavailability of work to a person in [Perman's] circumstances, which normally would require a showing ... [of] reasonable efforts to secure suitable employment." 2 *Larson's Workmen's Compensation Law* § 57.61(d) (1989). Thus, evidence was lacking to show that Perman's "wage loss comes about through refusal or unavailability of employment." *Id.*, § 57.61(a). We agree with the Bureau that the evidence did not show that Perman's work injury led employers to refuse her employment or precluded her from obtaining employment.

From our review of the record, we conclude that the Bureau reasonably reached its factual determinations by the greater weight of all the evidence. *Power Fuels, Inc.*, 283 N.W.2d at 220. The Bureau's material findings of fact are supported by a preponderance of the evidence, its conclusions of law are sustained by the findings of fact, and its decision is supported by the conclusions of law. The district court,

therefore, erred in reversing the Bureau's decision.

We reverse the district court's judgment and remand for entry of a judgment affirming the Bureau's decision.

ERICKSTAD, C.J., and GIERKE and VANDE WALLE, JJ., concur.

LEVINE, J., concurs in the result.