Karen L. FROYSLAND, Appellant,

v.

NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee.

Civ. No. 880155.

Supreme Court of North Dakota.

Dec. 6, 1988.

Joseph F. Larson, II (argued), James-town, for appellant.

Hugh Patrick Seaworth (argued), Asst. Atty. Gen., North Dakota Workers Compensation Bureau, Bismarck, for appellee.

ERICKSTAD, Chief Justice.

Karen Froysland was injured December 12, 1985, while working for the City of Williston. She filed a claim with the North Dakota Workers Compensation Bureau. The Bureau accepted the claim and paid medical expenses in connection with the injury. On August 14, 1987, the Bureau issued an order affirming its July 1, 1986, order which continued payment of medical expenses but denied disability benefits and rehabilitation retraining benefits. The district court affirmed the decision of the Bureau and entered judgment on March 23, 1988. Froysland brought this appeal from the judgment of the district court. We reverse in part, affirm in part, and remand.

Froysland began working as a water me-ter reader for the City of Williston in March of 1981. She held this position until January 3, 1986, when she was laid off because the City was changing to a new method of reading meters. While working for the City of Williston, Froysland filed three workers compensation claims. The last claim filed, arising out of an injury incurred in mid-December, is the subject of this appeal.

While walking from house to house, reading meters, Froysland stepped into a snow-covered depression and jarred her neck. She saw Dr. Francis Corner, a chiro-practor, the day of the injury, December 12, and again on December 31, 1985, and was diagnosed as having an "[a]cute strain to the cervical spine superimposed upon a chronic neck problem." On January 6, 1985, Froysland went to see Dr. Dean Strinden who diagnosed the injury as an acute strain of the cervical spine area. She filed a medical expense claim form with the Bureau on January 7, 1986. Froysland continued to see Dr. Strinden periodically and was also referred to Kevin Spooner, a physical therapist, for treatment.

On March 14, 1986, the Bureau notified Froysland that it had reviewed her file and decided that she should undergo a complete medical assessment through Medcenter One in Bismarck, which she did beginning April 27, 1986. The final team diagnosis was:

"1. Anxiety-conversion reactions with variable muscle tensions and somatiza-tions.

"2. Post soft tissue injury with residual tenderness neck and lower back (myo-facial pain and dysfunction)."

The assessment team's recommendations included continuation of an exercise pro-gram and physical therapy and a return to light/moderate work.

Froysland continued to see Dr. Strinden, complaining of pain in and around the cer-vical spine area and also about the trapezi-us muscle on the right side. She also con-tinued with physical therapy. On July 24, 1986, Dr. Strinden filled out a Job Service form indicating that Froysland could return to work which did not involve heavy lifting.

On July 1, 1986, the Bureau issued an order which denied disability and rehabilita-tion retraining benefits but continued to pay medical expenses directly related to the December 12, 1985, injury. Froysland re-quested, and was granted, a rehearing. Froysland also requested, in writing, the opportunity to cross-examine any person furnishing information which the Bureau wished to consider relative to her claim. The Bureau responded that it would rely upon Froysland's entire file and any evi-dence adduced at the hearing. The Bureau advised Froysland that she could cross-ex-

amine whomever she desired, but there was no authority requiring the Bureau to pay for the associated costs. The Bureau informed Froysland that it would consider reasonable requests but would not allow carte blanche payment.

The hearing was held on April 23, 1987, and Dr. Strinden's deposition was also taken at that time. Froysland called several witnesses and submitted several more affidavits in support of her contentions. The Bureau called Beverly Schoedel, the rehabilitation specialist it had asked to review Froysland's records, and Froysland did cross-examine that witness. No other medical professionals were present at the hearing or deposed by the Bureau.

On August 14, 1987, the Bureau issued an order affirming its earlier order which denied disability and rehabilitation benefits. In its Findings of Fact, the Bureau stated:

### "VII.

"On March 13, 1986, the claimant's physician Dr. Strinden, indicated that claimant could not be gainfully employed at that time.

### "VIII.

"The Bureau referred claimant to Medcenter One for an assessment in April, 1986.

### "IX.

"The recommendations of the Medcenter One team of physicians were unequiv-

ocal. The claimant was advised to return to work. The only restriction the assessment team placed on the claimant was that she should confine herself to light to moderate work.

\* \* \* \* \* \*

### "XII.

"The final diagnosis of the assessment team was anxiety-conversion reaction with variable muscle tensions and somatizations; and post soft tissue injury with residual tenderness neck and lower back.

### "XIII.

"Although the Medcenter One assessment team had found the claimant capable of work, the claimant's physician did not release the claimant for work until July 24, 1986. That release came when the claimant told her physician ... that she could not collect unemployment benefits unless she was released for work.

### "XIV.

"The greater weight of the evidence indicates that the claimant was not disabled from March 13, 1986, to July 24, 1986."

Froysland appealed this order to the district court. On March 15, 1988, that court affirmed the order of the Bureau. Froysland then appealed to this Court.

The issues we will consider on appeal are as follows: [1]

I. Did the procedure followed by the Bureau afford Froysland due process?

"A. PROCESS AND PROCEDURE IN FORMAL WORKER'S COMPENSATION HEARINGS MUST MEET THE REQUIREMENTS OF CHAPTER 28–32, N.D.C.C."
"B. THE BUREAU MAY NOT CONSIDER INFORMATION OUTSIDE OF THE OFFICIAL RECORD."
"V. KAREN'S HEARING DID NOT PROVIDE DUE PROCESS OF LAW."
"A. THE COMMISSIONERS LACK NEUTRALITY."
"B. THERE IS NO MEANINGFUL SELECTION CRITERIA OR THRESHOLD QUALIFICATIONS FOR THE COMMISSIONERS TO

---

1. In her brief, Froysland contends:
 "II. KAREN IS ENTITLED TO DISABILITY BENEFITS."
 "A. KAREN'S DISABILITY STATUS IS PROVED BY DR. STRINDEN'S TESTIMONY."
 "B. THE BUREAU DID NOT DEMONSTRATE THAT WORK IS AVAILABLE FOR KAREN."
 "C. KAREN IS AN 'ODD LOT' WORKER."
 "III. KAREN IS ENTITLED TO REHABILITATION BENEFITS."
 "IV. THE BUREAU'S PROCESS AND PROCEDURE HAVE NOT AFFORDED KAREN A FAIR AND IMPARTIAL HEARING."

II. Is Froysland entitled to further disability benefits?

III. Is Froysland entitled to rehabilitation benefits?

IV. Was Froysland granted a fair hearing?

 Pursuant to Section 28–32–19, N.D.C.C., we must affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence or its conclusions are not supported by its findings of fact. *Claim of Olson*, 419 N.W.2d 894 (N.D.1988). In determining whether or not an agency's findings of fact are supported by a preponderance of the evidence we do not make independent findings of fact or substitute our judgment for that of the agency, but we determine only whether a reasoning mind could reasonably have determined that the factual conclusions were supported by the weight of the evidence. *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D.1979).

## I.

*Did the procedure followed by the Bureau afford Froysland due process?* [2]

 The claimant has the burden of establishing his or her right to participate in benefits from the Workers Compensation Fund. *Steele v. North Dakota Workmen's Comp. Bur.*, 273 N.W.2d 692, 698 (N.D. 1979). If the Bureau terminates benefits, after initially accepting a claim and paying benefits, the claimant has the burden of proving his or her right to continue receiving benefits. *Gramling v. North Dakota Workmen's Comp. Bur.*, 303 N.W.2d 323, 325–26 (N.D.1981). Our decisions have recognized that the adversarial concept has only limited application in determinations related to workers compensation claims. *Howes v. North Dakota Workers Comp. Bur.*, 429 N.W.2d 730 (N.D.1988).

After receiving Dr. Strinden's reports, the Bureau decided to require Froysland to undergo a complete medical assessment through Medcenter One. The diagnosis of the assessment team differed from that of Dr. Strinden. Also, while the recommendations of the team are parallel to those of Dr. Strinden as to work restrictions, light to moderate work, there is a disagreement as to the date at which Froysland could begin working. Without any explanation other than a recitation of the findings of the Medcenter One team in contradistinction to the opinion of Dr. Strinden, the Bureau decided that "[t]he greater weight of the evidence indicates that the claimant

SERVE AS ADMINISTRATIVE LAW JUDGES."

"C. THERE IS NO REQUIREMENT FOR CONTINUING EDUCATION TO REACH AND MAINTAIN PROFESSIONAL COMPETENCE AS ADMINISTRATIVE LAW JUDGES."

"D. COMMISSIONERS, AS ADMINISTRATIVE LAW JUDGES, HAVE NO RULES OF PROCEDURE OR ETHICS TO GUIDE THEM."

"E. FAILURE TO ANSWER INTERROGATORIES AND OFFER EVIDENCE DEPRIVES A CLAIMANT OF MEANINGFUL NOTICE OF THE INFORMATION TO BE CONSIDERED."

"F. FAILURE TO OFFER EVIDENCE DEPRIVES A CLAIMANT OF THE RIGHTS OF CONFRONTATION AND CROSS–EXAMINATION OF WITNESSES."

"G. FAILURE TO INDIVIDUALLY MARK AND OFFER EVIDENCE DEPRIVES A CLAIMANT OF A MEANINGFUL OPPORTUNITY TO OBJECT TO ITS ACCEPTANCE AND CONSIDERATION."

"H. THE RECORD OF THE FORMAL HEARING IS INCOMPLETE AND IMPERMISSIBLY SUSPECT WHEN EVIDENCE IS NOT INDIVIDUALLY MARKED AND OFFERED."

"I. EX PARTE COMMUNICATIONS VIOLATE DUE PROCESS GUARANTEES."

The Bureau, however, contends the issues are:

"I. Is Karen Froysland entitled to disability and/or rehabilitation benefits?

"II. Has the Bureau denied Froysland a fair hearing or due process of law?"

2. While Froysland raised numerous constitutional issues in her brief, in oral argument her counsel stressed the following issues:

1. What is part of the record? (Referring to the Bureau's practice of putting the entire file into the record.) What rules must be followed with respect to cross-examination?

2. Whether or not it is ethical or constitutional for the same commissioners to decide a claim at both the informal and the formal hearings; and

3. Whether or not the Code of Judicial Conduct applies to Bureau commissioners.

was not disabled from March 13, 1986, to July 24, 1986." In his brief, and also in oral argument, counsel for the Bureau acknowledged that it did not expressly state its reasons for rejecting Dr. Strinden's opinion. In the absence of express findings relative to why Dr. Strinden's uncontradicted testimony was rejected, the Bureau has now conceded that Froysland was disabled, and entitled to disability benefits, for the period of January 6, 1986, to May 1, 1986. The issue of disability now narrows to the period between May 1, 1986, and July 24, 1986.

■ We recognize that the Bureau is the appropriate fact-finder in compensation cases and as such has the duty to weigh and resolve conflicting evidence. Case law from other jurisdictions seems to indicate that the testimony of a treating physician is not presumptively entitled to a greater weight of probative value than the testimony of other physicians. *Grimes Box Company, Inc. v. Miquel*, 509 A.2d 1002 (R.I. 1986). The nature and number of examinations by a physician are factors affecting the credibility of that witness and the weight to be attached to his testimony. *Vredeveld v. Gelco Exp.*, 222 Neb. 363, 383 N.W.2d 780 (1986). However, we will look at the procedure utilized under these particular circumstances in the light of our recent decision in *Howes, supra*.

In *Howes*, we considered whether or not the Bureau's formal hearing process denies a claimant due process of law as guaranteed by the state and federal constitutions. Specifically, we addressed the question of whether or not the Bureau was required to

pay the costs incurred when a claimant demanded the right to cross-examine expert witnesses. *See Howes v. North Dakota Workers Comp. Bur., supra*, 429 N.W. 2d 730.

We looked to section 28–32–07, N.D. C.C.,[3] and determined that it clearly granted a claimant, upon written request, the opportunity to cross-examine, at a further public hearing, medical experts whose opinions are part of the record. We said, however, that "section 28–32–07, N.D.C.C., does not require the Bureau to pay for the costs of the cross-examination." *Howes*, 429 N.W.2d at 735.

Relying on sections 65–02–08 and 65–10–03, N.D.C.C., we said that the North Dakota Legislature specifically requires the Bureau to pay the claimant's attorney's fees and costs on appeal. "The costs of taking depositions and subpoenaing expert witnesses for cross-examination, being not a part of the 'appeal' process, are not set by the appellate court but are governed by section 28–23–09, N.D.C.C." *Howes*, 429 N.W.2d at 736.

Section 28–32–09, N.D.C.C., reads in relevant part:

"*28–32–09. Subpoena and attendance of witnesses....* The deposition of a witness or party in any proceeding before an agency may be taken in the same manner and on the same notice as in a civil action pending in the district court. Interrogatories may be sent to any witness or party in any proceeding in the same manner and on the same notice as .in an action pending in the district court. A party, other than the adminis-

3. Section 28–32–07, N.D.C.C., reads:

"*Consideration of information not presented at a formal hearing.* If an administrative agency desires to avail itself of competent and relevant information or evidence in its possession or furnished by members of its staff, or secured from any person in the course of an independent investigation conducted by such agency, in addition to the evidence presented at any formal hearing, it may do so after first transmitting a copy of such information or evidence or an abstract thereof to each party of record in the proceeding, and after affording each such party, upon written request, an

opportunity to examine such information or evidence and to present evidence in connection therewith and to cross-examine the person furnishing such information at a further public hearing to be called and held upon at least ten days' notice given by registered or certified mail. Nothing contained in this section prevents any administrative agency from taking notice of any fact or facts set forth in its duly adopted rules or any facts which are judicially noticed by the courts of this state."

trative agency, must first show good cause before undertaking discovery proceedings, including interrogatories. Any witness who is subpoenaed under the provisions of this section and who appears at the hearing, or whose deposition is taken, shall receive the same fees and mileage as a witness in a civil case in the district court, *and such fees shall be paid by the party or agency at whose instance the witness appears or his deposition is taken.*" [Emphasis added.]

We said in *Howes* that it is within the Bureau's discretion to approve the taking of depositions to be paid for by the Bureau, and each case must be judged on its merits. *Howes*, 429 at 736. In *Howes*, however, the claimant wanted to cross-examine his own doctor and not one sought out by the Bureau as its own expert to meet the claimant's expert testimony. Application of section 28–32–09, N.D.C.C., would place the costs of such examination on the claimant. This is not the situation here. The Bureau requested a complete medical assessment by Medcenter One and used the conclusions drawn by that team to refute the diagnosis and recommendations of Dr. Strinden, Froysland's treating physician.

According to section 65–01–11, N.D.C.C., the claimant has the burden of proving, by a preponderance of the evidence, that he or she is entitled to participate in the fund. When the Bureau retains experts, whose opinions it uses to refute the claimant's treating physician, and then refuses cross-examination of those experts unless paid for by the claimant, it effectively denies most claimants a real opportunity to prove their entitlement to benefits. If section 28–32–09, N.D.C.C., is read to permit such a procedure, a potential due process violation may exist. In order to avoid finding such a violation, we construe section 28–32–09, N.D.C.C., to require the Bureau to bear the costs of discovery of its expert witnesses upon whom it primarily relied, where such witnesses were originally retained by the Bureau, and where their expert opinions were relied upon to refute the

testimony and conclusions of the claimant's treating physician.

We accordingly reverse the order of the district court and remand this case to the Bureau to allow Froysland to cross-examine those particular experts upon whose testimony the Bureau primarily based its findings of fact and conclusions of law. The expense of this examination shall be borne by the Bureau. The Bureau shall amend its order to provide disability benefits from January 6, 1986, to May 1, 1986, and upon a further hearing, redetermine the issue of disability from May 1, 1986, to July 24, 1986.

■ We note that the Legislature has addressed this specific situation, where the claimant's physician and the Bureau's physician are in disagreement. Section 65–05–28, N.D.C.C., provides in pertinent part: "In case of any disagreement between physicians making an examination on the part of the bureau and the employee's physician, the bureau shall appoint an impartial physician duly qualified who shall make an examination and shall report thereon to the bureau."

In the future, if the Bureau utilizes this solution provided by the Legislature when confronted by a disagreement between the claimant's physician or physicians and the Bureau's physician or physicians, it may then refuse to pay the expenses of the cross-examination of its physician or physicians by the claimant.

Although we find that the cross-examination issue is dispositive of this appeal, in the interests of justice we will briefly address the other major issues raised by the claimant.

## II.

### *Is Froysland entitled to further disability benefits?*

■ Froysland argues that the inability to find work, traceable directly and substantially to a compensable injury, is as effective in establishing disability as inabili-

ty to perform work. She insists that the result is the same whether or not the wage loss comes about through refusal to hire or unavailability of employment rather than through incapacity to perform the work. She asserts that the Bureau has not demonstrated that employment was available to her and she is therefore entitled to disability benefits.

Our recent decision in *Claim of Olson* is persuasive on this issue. *Claim of Olson*, *supra*, 419 N.W.2d 894. There, although the claimant argued that she was unskilled and unable to find work following an injury, she had performed a variety of other tasks in her job which were not restricted by her injury, and in the past she had done other work. In agreeing with the district court that she had "the ability and experience to return to gainful employment of some kind," we concluded that "the evidence does not indicate that she is unable to work." *Claim of Olson*, 419 N.W.2d at 897. Similarly, we cannot say that it was error to deny Froysland disability status, when she was able to perform many employment-related activities.[4] *See Jimison v. North Dakota Workmen's Comp. Bur.*, 331 N.W.2d 822, 827 (N.D.1983).

### III.

### Is Froysland entitled to rehabilitation benefits?

■ Froysland next contends that she is entitled to rehabilitation benefits. She claims that the only way she is going to regain her lost earning ability is through retraining into a field which fits within her physical abilities. As she was unable to find work in the Williston area during the month of August 1986, Froysland began a course of study at the University of North Dakota, Williston branch, which she anticipates completing in four years. She apparently considers this route a form of vocational rehabilitation and wants the Bureau to pay for books, tuition, fees, etcetera.

Froysland has referred us to two Nebraska cases which she cites as support for her claim of entitlement to rehabilitation benefits. In *Thom v. Lutheran Medical Center*, 226 Neb. 737, 414 N.W.2d 810 (1987), the Workers Compensation Court found that the claimant had suffered a loss of earning power and was entitled to vocational rehabilitation services. The Nebraska Supreme Court applied its standard of review that "the findings of fact made by the Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly wrong." *Thom*, 414 N.W.2d at 813. Upon reviewing its statutes and case law, the court decided that the evidence supported the compensation court's specific findings that the vocational rehabilitation awarded would reduce the amount of earning power the claimant would otherwise lose and its implied finding that the rehabilitation was in the claimant's best interests, to the extent that the findings could not be said to be clearly wrong.

We find that *Thom* is distinguishable from Froysland's circumstances here. In *Thom*, the Workers' Compensation Court had found a disability and had awarded vocational rehabilitation. The reviewing

---

4. Froysland filed compensation and medical expense claims related to the December 12, 1985, injury. The Bureau accepted the claims and paid the medical expenses, apparently pursuant to section 65–05–07, N.D.C.C., which requires an injured employee to be given medical and hospital services. Neither the Bureau nor Froysland have argued the applicability of section 65–05–15, N.D.C.C., which covers aggravation of a preexisting condition. Likewise, Froysland has not sought relief under section 65–05–10, N.D.C.C., which provides:

"*Partial disability—Weekly Compensation.* If the injury causes partial disability the fund shall pay to the disabled employee during such disability a weekly compensation to be fixed by the bureau."

Froysland, however, asserts that she is totally disabled and should be classified as an "odd lot" worker. This issue was not raised before the Bureau and as we review the record compiled by the Bureau, this contention is not properly before us. *Gramling v. North Dakota Workmen's Comp. Bur.*, 303 N.W.2d at 327.

court upheld that decision because it was not clearly wrong. Likewise, we will uphold the decision of the Bureau if we determine that a reasoning mind could reasonably have determined that the factual conclusions drawn are supported by the weight of the evidence.

The Nebraska Supreme Court also affirmed the order of the Workers' Compensation Court in *Snyder v. IBP, Inc.*, 222 Neb. 534, 385 N.W.2d 424 (1986). There the claimant argued, as Froysland does here, that "earning power ... is measured by an evaluation of a worker's general eligibility to procure and hold employment, his or her capacity to perform the tasks required by the work, and his or her ability to earn wages in employment in which he or she is engaged or is fitted." *Snyder*, 385 N.W.2d at 426. However, that court goes on to say, and we think the language is equally applicable to Froysland as it was to Snyder, that "once it is determined that no permanent disability, that is to say, no permanent physical impairment of the body as a whole, resulted from the subject accident, then it necessarily follows that no loss of earning power can result from that accident." *Id.* at 427. Likewise, as the record here supports the finding that there was no disability after July 24, 1986, at the latest, there can be no disability which is or is likely to be permanent. Vocational rehabilitation was therefore properly denied.

◼ In Chapter 65–05.1, N.D.C.C., the Legislature has provided for comprehensive rehabilitation services to workers compensation claimants "otherwise covered by this title." [5] However, section 65–05.1–04, N.D.C.C., provides:

"*Injured worker responsibility.* It shall be the responsibility of the injured worker to seek, obtain, and retain reasonable and substantial employment in order to reduce the period of temporary disability to a minimum. In the event that the injured worker is unable to obtain substantial employment as a direct result of his injury he shall promptly notify the bureau and thereafter be available for such examinations and testing as may be prescribed by the bureau to determine whether or not a program of rehabilitation is necessary. If the bureau determines that a program of rehabilitation is necessary and feasible, the injured worker, upon having been so notified, shall be available for such a program.

"If the injured worker shall fail to comply with this section without a reasonable cause, the bureau, by formal order, shall discontinue all lost-time benefits under this title during the period of noncompliance. If, upon the bureau order becoming final, the period of noncompliance shall continue for six months, the bureau shall have no further jurisdiction in awarding any further temporary total, temporary partial, permanent total, or rehabilitation benefits."

Ordinarily there must be a preliminary determination by the administrative commission that the claimant is qualified for rehabilitation, and that rehabilitation would be feasible, desirable, or necessary. 2 Larson's Workmen's Compensation Law § 61.23 (1987). The Bureau has determined that a program of rehabilitation is not necessary under the facts presented by Froysland. Further, Chapter 50–06.1, N.D.C.C., specifically addresses vocational rehabilitation. Section 50–06.1–06, N.D.C.C., provides in relevant part:

"It is the purpose of this chapter to provide for the health and welfare by ensuring to workmen's compensation claimants otherwise covered by this title, services, so far as possible, necessary to assist the claimant and the claimant's family in the adjustments required by the injury to the end that the claimant may receive comprehensive rehabilitation services. Such services shall include medical, psychological, economic, and social rehabilitation."

5. Section 65–05.1–01, N.D.C.C., reads:

"*Rehabilitation services.* The state of North Dakota exercising its police and sovereign powers, declares that disability caused by injuries in the course of employment and disease fairly traceable to the employment create a burden upon the health and general welfare of the citizens of this state and upon the prosperity of this state and its citizens.

*"Rehabilitation services provided to any disabled individual—Eligibility.* Vocational rehabilitation services shall be provided to any disabled individual:

1. Whose vocational rehabilitation the division executive director determines, after full investigation, can be satisfactorily achieved...."

The record does not indicate that Froysland has complied with this statutory procedure. We are unable to discern whether or not she has presented her request for vocational rehabilitation to the executive director of the vocational rehabilitation division of the Department of Human Services.[6]

## IV.

### *Was Froysland granted a fair hearing?*[7]

■ Froysland claims that she was not afforded due process through the hearing procedure employed by the Bureau because the same commissioners considered her claim both at the informal hearing and at the formal hearing and those commissioners did not have ethical rules to guide them

in their decisions. Although these issues were raised for the first time before the district court, we may address them because they question the constitutionality of the hearing procedure followed by the Bureau.[8] We considered the constitutionality of a similar administrative structure in *First American Bank & Trust Company v. Ellwein,* 221 N.W.2d 509 (N.D.1974), where the Banking Board was charged by statute with a tripartite responsibility of performing investigative, accusative, and adjudicative functions. We said that "[d]ue process of law presupposes a fair and impartial hearing before a fair and impartial tribunal. The board hearing the case should be a qualified board without prejudice and strictly impartial as to the issues to be tried."[9] *First American Bank,* 221 N.W.2d at 513. However, "[t]he mere fact that all three functions are combined in one board is not in itself a denial of due process." *Id.*

■ An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Board of*

---

6. Had this avenue of approach been pursued at the onset of disability and the concurrence of a poor job market, the results might have been better for all concerned. It appears that section 65–05.1–06, N.D.C.C., does permit early attention to rehabilitation retraining. Section 65–05.1–06 provides in pertinent part: "In the event of a contract as provided in section 65–05.1–05, the bureau, in lieu of temporary total, temporary partial, and permanent total benefits may award a rehabilitation allowance to any claimant in order to effect the purpose of the contract."

7. We have said that "[o]ne who attacks a statute on constitutional grounds, defended as that statute is by a strong presumption of constitutionality, should bring up his heavy artillery or forego the attack entirely." *So. Valley Grain Dealers v. Board of City Com'rs,* 257 N.W.2d 425, 434 (N.D. 1977). While we have considered all the issues Froysland has raised, we have not addressed the rest of them here as we find a lack of "heavy artillery." We also do not address these issues because we find them to be without merit and therefore determination of them is unnecessary for disposition of this appeal. *See Evjen v. North Dakota Workers Comp. Bur.,* 429 N.W.2d 418 (N.D.1988).

8. In *Johnson v. Elkin,* 263 N.W.2d 123, 126 (N.D. 1978), we adopted the general rule that "administrative agencies have no authority to decide upon the constitutionality of the statutes under which they operate." We held that "a question of the constitutionality of an act under which an administrative agency operates may be raised for the first time on appeal to the district court, if based solely on the record made in the administrative agency...." *Johnson,* 263 N.W.2d at 127.

9. The United States Supreme Court has said that "[i]t is sufficiently clear from our cases that those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes.... [Cites omitted.] It has also come to be the prevailing view that '[m]ost of the law concerning disqualification because of interest applies with equal force to ... administrative adjudicators.'" *Gibson v. Berryhill,* 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973), *citing* K. Davis, Administrative Law Text § 12.04, p. 250 (1972).

*Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985), citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). However, the minimal due process that must be afforded participants before an administrative board is not synonymous with the minimal requirement of due process in a court of law. *First American Bank, supra.* The North Dakota Legislature in enacting chapter 28–32, N.D.C.C., the Administrative Agencies Practice Act, set out the due process requirements for administrative agencies. *Steele v. North Dakota Workmen's Comp. Bur.*, 273 N.W.2d 692 (N.D. 1979).

■ In reviewing the challenged lack of due process at the administrative hearing, due to bias, we begin with the presumption that the Bureau regularly performed its duty and accordingly afforded Froysland due process at the hearing by refusing to allow any possible previous bias or prejudgment to interfere with its decision based upon evidence presented at the hearing. *See First American Bank*, 221 N.W.2d at 515; section 31–11–03(15), N.D. C.C. (presumption that official duty has been performed regularly.) "Our trust must be in the integrity of legally constituted boards to act upon the evidence alone. Judicial review of those actions is the ultimate due process protection accorded those aggrieved."[10] *First American Bank*, 221 N.W.2d at 517. After carefully reviewing the record, we find no substantial evidence that taints the hearing here.

For the reasons stated herein, we reverse in part, affirm in part, and remand to the North Dakota Workers Compensation Bureau to amend its order to provide disability benefits from January 6, 1986, to May 1, 1986, and upon further hearing, to redetermine the issue of disability from May 1, 1986, to July 24, 1986.

GIERKE and VANDE WALLE, JJ., concur.

LEVINE and MESCHKE, JJ., concur in the result.

---

10. In *Levey v. North Dakota Workers Comp. Bur.*, 425 N.W.2d 376, 377 (N.D.1988) the claimant, who had been awarded vocational rehabilitation benefits for two years, argued that his constitutional right to due process had been violated when the Bureau terminated his disability benefits because he had failed to enter into a vocational rehabilitation contract as required by the Bureau's order. We declined to address the contention, believing its merits to be questionable, as the order appeared to give Levey notice of the proposed action and an opportunity to respond. *Id.* at 378. Furthermore, the benefits were reinstated following additional correspondence by Levey. *Id.*