Loren OLLOM, Appellant,

v.

NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee.

Civ. No. 940385.

Supreme Court of North Dakota.

April 13, 1995.

Stephen D. Little, of Dietz & Little, Bismarck, for appellant.

Ken R. Sorenson, Asst. Atty. Gen., North Dakota Workers Compensation Bureau, Bismarck, for appellee.

VANDE WALLE, Chief Justice.

Loren Ollom appealed from a district court judgment affirming a North Dakota Workers Compensation Bureau order denying Ollom's request for reinstatement of disability benefits. We reverse and remand for further proceedings consistent with this opinion.

On April 9, 1980, Ollom's left foot and ankle were crushed during the course of his employment as an oil well driller. Ollom applied for workers compensation benefits, and the Bureau accepted liability on the claim. As a result of the injury, Ollom had four ankle surgeries, the last performed in 1988. After that surgery, Ollom developed a pulmonary embolus or blood clot which was causally related to the surgery and the initial work injury. Despite his medical problems, Ollom was able to work part-time as a self-employed roofer until 1991 when he claims he was no longer physically able to perform that work.

A dispute arose between Ollom and the Bureau involving rehabilitation and Ollom's ability to work, and they entered into a stipulated agreement on June 27, 1991 to resolve the matter. The stipulation provided that the Bureau would continue to pay medical expenses related to the initial injury and would pay Ollom a lump sum of $36,000 "as full and complete settlement of the claim for disability benefits and vocational rehabilitation retraining benefits." Shortly thereafter, Ollom began working as a self-employed manager and trainer for a marketing group.

During October 1991 Ollom suffered another pulmonary embolus. Ollom was treated and given a prescription to take Coumadin, a blood thinner, to prevent a recurrence. Ollom then filed another claim for disability benefits with the Bureau, asserting the Coumadin treatment prevents him from taking non-steroidal anti-inflammatory medications, and the resulting pain and swelling in his ankle prevents him from doing the standing and walking required by his job as a manager and trainer.

On August 12, 1992 the Bureau entered findings, conclusions, and an order denying Ollom's claim for reinstatement of disability benefits. The Bureau concluded Ollom did have "a significant change in his medical condition since the date of the stipulation." However, the Bureau interpreted the 1991 stipulation in the following manner:

"The stipulation reflects payment of 104 weeks of time-loss compensation from July 12, 1991.... Loren Ollom is not entitled to disability benefits until July 12, 1993, as the monies paid pursuant to the stipulation are for time-loss benefits through that time."

After the two-year benefit period expired, the Bureau scheduled Ollom for independent medical evaluations by a cardiologist, an orthopedist, and a doctor of internal medicine. Following those evaluations, the Bureau entered a final order, on January 10, 1994, denying Ollom's claim for reinstatement of disability benefits. As part of that order the Bureau made the following relevant factual conclusions:

"The greater weight of the evidence indicates that as of July 12, 1993, claimant's medical condition is the same as it was immediately prior to entering into the stipulation.

\*　　\*　　\*　　\*　　\*　　\*

"As of July 12, 1993, claimant no longer has a work related disabling condition and his medical condition has returned to the status prior to the October, 1991 pulmonary embolism. Absent a significant change in medical condition due to the work injury, claimant is not entitled to disability benefits beyond those already paid."

Following the Bureau's denial of his claim, Ollom could have, but did not, request an evidentiary hearing under Section 65–01–14(4), N.D.C.C. Instead, Ollom appealed to the district court, which affirmed the Bureau's denial of his claim. Ollom then filed this appeal.

Ollom asserts he is entitled to reinstatement of disability benefits, because the Coumadin he takes to prevent a recurrence of the pulmonary embolus prevents him from taking anti-inflammatory medications for his ankle which, in turn, renders him unable to continue the work he was able to do when the stipulated settlement was entered in June 1991. The Bureau responds that Ollom has failed to prove he now has a greater disability than he had at the time the settle-

ment was entered and, therefore, he is not entitled to additional disability benefits.

▮ Under Section 28–32–19, N.D.C.C., we review the Bureau's decision, not the decision of the district court. *Holmgren v. N.D. Workers' Compensation Bureau*, 455 N.W.2d 200 (N.D.1990). We will affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence or its conclusions are not supported by its findings. *Latraille v. N.D. Workers Compensation Bureau*, 481 N.W.2d 446 (N.D.1992). In evaluating the Bureau's findings of fact, we do not make independent findings or substitute our judgment for that of the Bureau, rather we determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence on the entire record. *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D.1979).

▮ A claimant has the burden of establishing the right to participate in benefits from the workers compensation fund. *Froysland v. N.D. Workers Compensation Bureau*, 432 N.W.2d 883 (N.D.1988). However, the adversarial concept has only limited application to claims for workers compensation benefits, and the Bureau may not rely upon medical evidence favorable to its position without attempting to clarify inconsistent medical evidence which is favorable to the claimant's position. *Howes v. N.D. Workers Compensation Bureau*, 429 N.W.2d 730 (N.D.1988), *cert. denied*, 489 U.S. 1014, 109 S.Ct. 1126, 103 L.Ed.2d 189 (1989).

▮ In a letter memorandum, dated January 9, 1992, Ollom's treating physician, Dr. Frederick J. Kimball, M.D., concluded that Ollom's 1991 pulmonary embolism was related to his prior embolism which was related to his original work injury. Ollom's foot doctor, Dr. William Healey, D.P.M., concluded in a March 23, 1992 memorandum that the pain and swelling in Ollom's ankle and leg, resulting from his inability to take anti-inflammatory medications because of the Coumadin therapy, precludes Ollom from doing the amount of walking and standing required by his job as a manager and trainer. In a letter to Ollom's attorney, dated September 30,

1993, Dr. Healey also concluded that the risk associated with Ollom's past history of pulmonary emboli will require Ollom to remain on Coumadin therapy for the rest of his life. Dr. Jeffrey M. Cary, M.D., a physician specializing in internal medicine, examined Ollom in 1993 and concluded "the pulmonary emboli that required treatment in 1988 and in 1991 and continue to require therapy and other monitoring are a result of the work-related injury."

This uncontroverted medical evidence shows that Ollom's Coumadin therapy is related to his original work injury and that it precludes Ollom from taking anti-inflammatory medication for his ankle. The evidence also shows, without contradiction, that Ollom's inability to take such medication has caused increased pain and swelling in his ankle and leg preventing him from continuing his job as a manager and trainer that he began in 1991. We conclude that a reasoning mind could not reasonably conclude Ollom's medical condition is the same as it was when the stipulation was entered in 1991, that Ollom no longer has a work-related disabling condition, or that Ollom's medical condition has returned to the status of that condition as it existed prior to the October 19, 1991 pulmonary embolism. Those factual conclusions by the Bureau are not supported by a preponderance of the evidence. The medical evidence clearly shows that Ollom currently suffers from a physical disability which exceeds his disability in 1991 when the stipulated agreement was executed.

However, physical impairment alone does not justify an award of disability benefits, and the claimant must demonstrate that as a result of a physical inability to perform certain work the employee has·suffered a loss of earning capacity that is causally related to the disability. Section 65–01–02(13), N.D.C.C.; *Rooks v. N.D. Workers' Compensation Bureau*, 506 N.W.2d 78 (N.D.1993). In this case our review is hampered because there was a direct appeal from the Bureau's denial of Ollom's claim, without an evidentiary hearing. At least partially in consequence of there being no evidentiary hearing, the record is unclear whether Ollom's current physical disability has caused a loss of earning capacity for him since 1991. Because the Bureau found no change in Ollom's condition, the Bureau made no finding on the issue of loss of earning capacity.

Dr. Thomas Hutchinson, M.D., evaluated Ollom on April 27, 1992 and observed "Mr. Ollom is physically capable of performing reasonably continuous work activities in a modified sedentary range of work." Ollom asserts his previous work as a manager and trainer required more extensive activity than Dr. Hutchinson has concluded Ollom is now capable of performing. However, the record does not show whether, or to what extent, Ollom's physical limitation of working in a modified sedentary job affects his earning capacity.

We conclude that it is appropriate, under the circumstances of this case, to reverse the Bureau's decision which was based upon erroneous factual conclusions, and to remand for additional findings, following an evidentiary hearing, determining whether Ollom is currently entitled to disability benefits.

Reversed and remanded.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.