Carol J. NEMEC, Claimant and Appellant,

v.

NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee,

and

Ellendale Nursing Center, Respondent and Appellee.

Civil No. 950208.

Supreme Court of North Dakota.

Jan. 30, 1996.

Alan Baker of Baker Legal Clinic, Fargo, for claimant and appellant.

Adele Hedley Page, Special Assistant Attorney General, Fargo, for appellee.

Steven L. Latham of Wheeler Wolf, Bismarck, for respondent and appellee.

SANDSTROM, Justice.

Carol Nemec appeals from a district court judgment affirming the order of the North Dakota Workers Compensation Bureau determining Nemec was not entitled to disability benefits after March 17, 1992, and denying benefits for chiropractic care after July 17, 1992. We affirm.

I

In 1986, Nemec sustained a work-related injury in Minnesota to her neck, head, left arm, and left shoulder. Nemec received Minnesota workers compensation benefits and had certain work limitations as a result of her 1986 injuries.

Nemec moved to North Dakota and, in January 1992, was hired as a cook for 32 hours per week at the Ellendale Nursing Center (the Center). Nemec could not tolerate this employment because of difficulties related to her 1986 injury, so the Center transferred her to a dietary aide position at 26 hours per week. Nemec was still unable to perform the work, and the Center again accommodated Nemec by modifying her duties and dropping her work schedule to 6 to 9 hours per week. On March 12, 1992, while working this limited schedule, Nemec slipped on a wet floor at the Center and injured her right knee, hip, and elbow, her head, and her lower back.

Nemec was taken to the local emergency room and was held for observation for four hours. The report of the emergency room physician, Dr. McCracken, indicated Nemec would miss 5 to 7 days of work due to the injury.

Nemec filed a claim for benefits with the Bureau on March 17, 1992. On March 18, she kept a previously scheduled appointment with Dr. Koller, a neurologist who was treating Nemec for her 1986 injuries. Dr. Koller's report, and subsequent clarifications to the Bureau, expressed his opinion that Nemec could return to work with certain restrictions on lifting and flexing her neck.

Nemec had a lengthy history of chiropractic treatment, dating back to 1980. At the time of her injury, Nemec was receiving continuing chiropractic care from Dr. Kendall, her chiropractor in Ellendale. At Nemec's request, the Bureau approved Dr. Kendall as Nemec's treating doctor for her March 12 injury.

On May 19, 1992, the Bureau issued its order awarding Nemec disability benefits for the March 12 injury. Simultaneously, the Bureau issued a notice of intention to discontinue benefits, informing Nemec that her disability benefits were terminated effective March 17, 1992, because, based upon the opinions of Dr. McCracken and Dr. Koller, she was able to return to work on March 18.

In a June 10, 1992 letter to the Bureau, Dr. Kendall stated Nemec remained totally disabled and was unable to return to work. The Bureau then contacted Beth Muehlberg, a rehabilitation specialist, to perform a job analysis. Nemec also underwent a work tolerance assessment with a physical therapist and an occupational therapist. While Muehlberg's report indicated Nemec was capable of returning to her prior position, the therapists opined Nemec did not have the ability to return to work.

Nemec's treatment was being monitored by the Bureau's managed care vendor, Workers Compensation Casualty Services (WCCS). In July 1992, Dr. Jensen, a chiropractor with WCCS who had been monitoring Dr. Kendall's treatment of Nemec, advised the Bureau Nemec was not responding to the chiropractic care. He recommended Nemec be referred to Dr. Becker, a neurosurgeon who had examined her previously, and that no further chiropractic care be authorized. The Bureau accordingly advised Nemec and Dr. Kendall no payments for further chiropractic care would be available. After an examination, Dr. Becker expressed no opinion on Nemec's ability to return to work.

In November 1992, the Bureau scheduled an independent medical exam for Nemec with Dr. Litman, an orthopedic surgeon in Minneapolis. Dr. Litman was provided the results of the prior job analysis and work tolerance assessment. Based upon his examination and the records provided, Dr. Litman reported Nemec was able to perform her pre-injury job duties, and no further chiropractic treatment was warranted for her injuries. Dr. Litman suggested the appropriate treatment for Nemec would be weight loss, exercise, and muscle stretching, requiring no supervision.

On January 28, 1993, the Bureau issued an Order Denying Further Disability Benefits. An amended order was issued on March 30, 1993, clarifying aggravation issues. On June 7, 1993, the Bureau issued an Order Denying Specific Benefits, confirming its decision to terminate payment of chiropractic treatment after July 17, 1992. Nemec appealed each of the three orders and requested a rehearing. A hearing was held on November 3, 1993. On May 26, 1994, the Bureau issued its findings of fact, conclusions of law, and order determining Nemec was not entitled to disability benefits after March 17, 1992, or payment for chiropractic care after July 17, 1992. Nemec appealed to the district court, which affirmed the Bureau's order by judgment dated June 2, 1995. Nemec appealed to this Court.

The district court had jurisdiction under Art. VI, § 8, N.D. Const., and N.D.C.C. §§ 27-05-06, 28-32-15, and 65-10-01. This Court has jurisdiction under Art. VI, §§ 2 and 6, N.D. Const., and N.D.C.C. § 28-32-21. The appeal was timely under N.D.R.App.P. 4(a), and N.D.C.C. § 28-32-21.

## II

■ In an appeal from a judgment of the district court involving the decision of an administrative agency, we review the decision of the agency and not the decision of the district court. *Ollom v. North Dakota Workers Compensation Bureau*, 529 N.W.2d 876, 878 (N.D.1995); *Meyer v. North Dakota Workers Compensation Bureau*, 512 N.W.2d 680, 681 (N.D.1994). Under N.D.C.C. §§ 28–32–19 and 28–32–21, we must affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. *Otto v. North Dakota Workers Compensation Bureau*, 533 N.W.2d 703, 706 (N.D.1995). In determining whether the Bureau's findings of fact are supported by a preponderance of the evidence, we exercise restraint and do not make independent findings or substitute our judgment for that of the Bureau, but determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Otto* at 706; *Ollom* at 878.

■ The claimant bears the burden of proving by a preponderance of the evidence she is entitled to receive benefits from the fund. *Otto* at 706; *Ollom* at 878. In reconciling the claimant's burden of proof with our standard of review of a decision based upon conflicting medical evidence, the Bureau must clarify inconsistencies and adequately explain its rationale for disregarding medical evidence favorable to the claimant. *Otto* at 706; *Ollom* at 878.

## III

■ Nemec asserts she had a due process right to pretermination notice and an opportunity to be heard before the Bureau retroactively terminated benefits effective March 17, 1992.

Nemec relies exclusively upon *Beckler v. North Dakota Workers Compensation Bureau*, 418 N.W.2d 770 (N.D.1988), to support her due process argument. In *Beckler*, the claimant was injured in 1983 and subsequently developed carpal tunnel syndrome. Following surgery, Beckler received regular disability benefits from August 1985 through February 1986. The Bureau informed Beckler on February 12, 1986, that he was capable of returning to work on February 5, and therefore his disability benefits were being terminated retroactively to that date. Beckler was not afforded a pretermination hearing or opportunity to be heard.

Beckler appealed, asserting he had a due process right to be heard before ongoing benefits were terminated. This Court held the right to *continuing* disability benefits by a claimant already receiving them was a property right giving rise to due process protection. *Beckler* at 772–773. The Court stressed its holding applied only to termination of continuing benefits, and distinguished a claimant's rights upon an initial determination of a claim.[1] *See Beckler* at 772, 774. This Court concluded the Bureau must provide pretermination notice and a limited opportunity to respond before retroactively terminating ongoing disability benefits. *See Beckler* at 775.

■ *Beckler* is clearly distinguishable from this case. Nemec was not receiving benefits on a continuing basis when she was notified her benefits were terminated. The procedure employed here, with the Bureau simultaneously notifying Nemec that she was entitled to disability benefits for a closed five-day period and that benefits would be terminated effective March 18, 1992, was effectively an award of a single lump-sum disability payment for a five-day period. The claimant has

1. The United States Supreme Court, while recognizing that the termination of continuing benefits affects property rights, has not extended those protections to an initial determination on an applicant's claim. *Compare Atkins v. Parker*, 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985) and *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), *with Lyng v. Payne*, 476 U.S. 926, 106 S.Ct. 2333, 90 L.Ed.2d 921 (1986) and *Walters v. National Association of Radiation Survivors*, 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985). As the Court noted in *Lyng*, 476 U.S. at 942, 106 S.Ct. at 2343: "We have never held that applicants for benefits, as distinct from those already receiving them, have a legitimate claim of entitlement protected by the Due Process Clause of the Fifth or Fourteenth Amendment."

a right to rely upon continuing, regular, ongoing payments which triggers the due process protections under *Beckler.* Those same protections do not apply to a one time lump-sum award of disability benefits for a short, closed period of time.

■ Nemec also contends she was entitled to pretermination notice, and benefits could not be terminated until 21 days after such notice, under N.D.C.C. § 65–05–08.1(6):

"Upon receipt of a report or other evidence indicating a claimant who is receiving temporary total disability benefits has been or will be released to return to work, the bureau shall issue and mail to the claimant a notice of intention to discontinue benefits. Such benefits may thereafter be discontinued on the date of release to return to work or twenty-one days following mailing of the notice, whichever is later. The notice must include a statement of the reason for the action, a brief summary of the evidence relied upon by the bureau, and an explanation of the right to respond and the procedure for challenging the action and submitting additional evidence to the bureau."

By its terms, the statute applies only to claimants who are currently "receiving" temporary total disability benefits. The clear intent of the statute is to protect the claimant's right to rely upon regular ongoing benefits, not to provide a windfall to applicants on initial claims.

■ As the Bureau points out, Nemec's urged reading of the statute would lead to absurd results and penalize the Bureau for thoroughly investigating claims. If a claimant filed an application and was entitled to receive disability benefits for a short, closed period of time, the Bureau would be required to pay disability benefits through the period of its investigation, and, once it issued its notice of intent to terminate benefits, benefits would have to continue for 21 additional days. Under Nemec's reading of the statute, in a case such as this, where Nemec was apparently disabled for only five days, she would have been entitled to benefits under the statute for a period of nearly three months. We construe statutes to avoid ab-

surd and ludicrous results. *Tooley v. Alm,* 515 N.W.2d 137, 142 (N.D.1994).

We conclude the procedure employed by the Bureau in this case did not violate Nemec's due process rights or N.D.C.C. § 65–05–08.1(6).

### IV

Nemec challenges the Bureau's finding of fact she was not disabled after March 17, 1992. In support of this contention, Nemec argues (1) only her treating doctor could certify whether she was disabled and, (2) even if the Bureau could consider other evidence, the Bureau failed to adequately explain why it rejected Dr. Kendall's opinion Nemec remained totally disabled after March 17, 1992.

■ Nemec first asserts only the claimant's approved treating doctor may certify disability. Nemec relies upon N.D.C.C. § 65–05–08.1(1):

"The claimant's doctor shall certify the period of temporary total disability upon request of the bureau."

Nemec argues the statute requires the Bureau to accept the treating doctor's opinion on disability, and the Bureau's only other option is to require the claimant to change treating doctors under N.D.C.C. § 65–05–28.

Nemec has misread N.D.C.C. § 65–05–08.1(1). The statute unambiguously requires only that the treating doctor must provide an opinion on disability if requested by the Bureau. It does not provide, either expressly or implicitly, that *only* the treating doctor may provide an opinion on disability and the Bureau is bound by that opinion.

■ Nemec also argues the Bureau did not adequately explain why it rejected the opinion of Dr. Kendall. Although it is within the province of the Bureau to weigh conflicting medical opinions and to resolve these conflicts, the Bureau must consider the entire record, clarify inconsistencies, and adequately explain its reason for disregarding medical evidence favorable to the claimant. *Spangler v. North Dakota Workers Compensation Bureau,* 519 N.W.2d 576, 577 (N.D. 1994). The explanation for the Bureau's rejection of medical evidence favorable to the

claim may be provided through the Bureau's analysis of why it accepted contrary evidence. *Spangler* at 580.

In this case, the Bureau explained the basis for its rejection of the opinion of Dr. Kendall. The Bureau found "Dr. Kendall's opinion does not carry considerable weight insofar as the record does not reflect that he had any specific accurate knowledge regarding the requirements or nature of the claimant's dietary aide position." In particular, Dr. Kendall did not have the four-page job analysis, prepared by rehabilitation specialist Beth Muehlberg, which detailed Nemec's specific job duties and exertional requirements at the Center.

Further support for the Bureau's determination is found in its explanations of why it accepted the contrary opinions of Dr. Koller, Dr. Litman, and rehabilitation specialist Beth Muehlberg, all of whom opined that Nemec was able to return to work. The Bureau found each of them had reviewed the four-page job analysis as a basis for their opinions Nemec had the ability to return to her dietary aide position for nine hours per week on March 18, 1992.

Our limited scope of review of the Bureau's findings of fact requires we exercise restraint and not make independent findings or substitute our judgment for that of the Bureau. *Otto* at 706; *Ollom* at 878. On this record, we conclude the Bureau's finding Nemec was not disabled after March 17, 1992, is supported by a preponderance of the evidence.

### V

Nemec asserts the Bureau violated N.D.C.C. § 28–32–07, which affords the claimant the right to cross-examine any person furnishing information relied upon by the Bureau but not formally introduced at the hearing:

"An administrative agency may avail itself of competent and relevant information or evidence in its possession or furnished by members of its staff, or secured from any person in the course of an independent investigation conducted by the agency, in addition to the evidence presented at any formal hearing. It may do so after first transmitting a copy of the information or evidence or an abstract thereof to each party of record in the proceeding. The agency must afford each party, upon written request, an opportunity to examine the information or evidence and to present its own information or evidence and to cross-examine the person furnishing the information or evidence."

Nemec asserts the Bureau refused to pay costs and fees for Nemec to cross-examine Dr. Jensen, the managed care chiropractor. The Bureau concedes Nemec was entitled to cross-examine Dr. Jensen, but contends Nemec was responsible to subpoena him and pay his fees under N.D.C.C. § 28–32–09(6).

In a series of cases, this Court has discussed the responsibility of claimants and the Bureau for expenses of cross-examining expert witnesses under N.D.C.C. §§ 28–32–07 and 28–32–09. *See Smith v. North Dakota Workers Compensation Bureau,* 447 N.W.2d 250, 256–257 (N.D.1989); *Froysland v. North Dakota Workers Compensation Bureau,* 432 N.W.2d 883, 888–889 (N.D.1988); *Howes v. North Dakota Workers Compensation Bureau,* 429 N.W.2d 730, 735–738 (N.D.1988), *cert. denied,* 489 U.S. 1014, 109 S.Ct. 1126, 103 L.Ed.2d 189 (1989). We find it unnecessary to reach this issue because, even if we agreed with Nemec the Bureau should have paid for cross-examination of Dr. Jensen, Nemec has not shown she is entitled to any meaningful remedy.

Nemec relies upon *Froysland,* in which this Court concluded the Bureau was responsible to pay the fees for cross-examination of expert witnesses if the Bureau retained the expert and used the expert's opinion to refute the claimant's treating physician. *Froysland* at 889. The relief granted in *Froysland* was a remand to allow the claimant to cross-examine the experts at the Bureau's expense and for reconsideration of the issues affected by the experts' opinions. *Froysland* at 889.

In this case, Dr. Jensen did not provide any evidence affecting the Bureau's determination on disability. The Bureau relied upon Dr. Jensen only to support its conclusion Nemec was not entitled to payment for chiropractic care after July 17, 1992. Further-

240

more, Dr. Litman testified further chiropractic care was not warranted as of November 1992, when he examined Nemec. Accordingly, the only issue affected by Dr. Jensen's disputed evidence is Nemec's right to payment for chiropractic care for the period between July and November, 1992. If we agree with Nemec about her right to cross-examine Dr. Jensen at the Bureau's expense, the appropriate remedy under *Froysland* would be a remand for cross-examination and reconsideration of payment for chiropractic care between July and November, 1992.

On this record, however, it appears such relief would be meaningless. Nemec has not called our attention to evidence in the record showing she incurred unreimbursed expenses for chiropractic care during July–November 1992. In fact, Nemec has repeatedly asserted in her brief and at oral argument she did not receive chiropractic treatment during that time because of the Bureau's refusal to pay. No possible valid purpose can be served by a remand for reconsideration of payment for chiropractic expenses for a four-month period occurring three years ago, when concededly no chiropractic expenses were incurred. We will not issue an advisory opinion on questions for which no meaningful relief can be granted. *Richland County Water Resource Board v. Pribbernow*, 442 N.W.2d 916, 918 (N.D.1989).

### VI

We have considered the remaining issues raised by the parties and find them to be without merit. The district court judgment affirming the order of the Bureau is affirmed.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE, JJ., concur.